726 P.2d 885

**Timothy A. BOWER, Plaintiff-Appellee,**

v.

**WESTERN FLEET MAINTENANCE
and Ohio Casualty Insurance
Company, Defendants-Appellants.**

No. 8653.

Court of Appeals of New Mexico.

Sept. 4, 1986.

Charlotte Mary Toulouse, Toulouse, Toulouse & Garcia, P.A., Albuquerque, for plaintiff-appellee.

Michael H. Harbour, Montgomery & Andrews, P.A., Albuquerque, for defendants-appellants.

## OPINION

ALARID, Judge.

Defendants appeal from the judgment of the district court, which awarded plaintiff worker's compensation for a ninety-nine percent permanent disability, and an order awarding payment of certain costs incurred by plaintiff. On appeal, defendants raise five issues:

I. Whether the district court's finding that plaintiff is ninety-nine percent permanently disabled is supported by substantial evidence.

II. Whether the district court erred in concluding and ordering that defendants are entitled to a one percent credit for overpayment of past compensation benefits.

III. Whether the district court erred in limiting credit to defendants for overpayment of compensation benefits to the period after August 20, 1984.

IV. Whether the district court's award of $5,000 to plaintiff as attorney fees was an abuse of discretion; and

V. Whether the district court erred in awarding certain costs to plaintiff.

Finding no error by the district court, we affirm the trial court on all issues raised.

## PROCEDURAL HISTORY

Plaintiff Timothy A. Bower was injured in a work-related accident in 1978 which rendered him a paraplegic, and he has been receiving total disability benefits since the date of the injury. Upon discovering that plaintiff had returned to work, defendants filed a motion to terminate benefits. Following a hearing on defendants' motion, the trial court concluded that plaintiff's disability had not diminished or terminated. The trial court filed an order denying defendants' motion.

Defendants appealed the trial court's order, and this court held that the trial court erred in denying the motion and reversed the decision of the district court in a memorandum opinion. *Bower v. Western Fleet,* Ct.App. No. 8136 (Filed December 11,

1984). This court expressly recognized that plaintiff was partially, not totally, disabled, withholding any opinion concerning the percentage-extent of the disability.

After remand to the district court, defendants filed a motion for determination of plaintiff's disability pursuant to this court's mandate. Based on the evidence presented at the first hearing, as well as that presented at the second hearing in May 1985, the trial court filed a judgment awarding plaintiff benefits for a ninety-nine percent permanent partial disability. The judgment also ordered that defendants be credited for overpayments made to plaintiff at the rate of one percent since August 20, 1984, which corresponds to the date that defendants filed their motion to terminate. Additionally, the court awarded plaintiff $5,000 as attorney fees, and in response to plaintiff's motion to recover costs, the court ordered that defendants pay plaintiff $240 in challenged costs. The order regarding costs was filed after the notice of appeal; however, in the interests of judicial economy, we will consider defendants' challenge to that order along with the other issues raised.

## FACTS

Plaintiff is a twenty-five year old male who completed the eleventh grade; he has since earned his GED. In 1978, at the age of seventeen, he was employed as a mechanic's helper by defendant Western Fleet. The job required that plaintiff travel around the state and maintain fleet vehicles. His duties included oil changes, tune-ups, brake jobs, safety checks and other minor maintenance work. This was the only meaningful employment that plaintiff had before his accident.

In January of 1978, plaintiff was severely injured in a work-related accident. The injury rendered him permanently paralyzed from the waist down, confining him to a wheelchair. Defendants have paid total disability (including all medical expenses, housing assistance and automobile modification expenses) since the date of the accident. From January 1978 until 1982, plaintiff was not employed in any capacity.

In May 1982, plaintiff began working as a wheelchair repairman for a medical supply company. Plaintiff worked a forty-hour work week, earning $4.00 per hour, and was able to perform the required duties of the job. He worked for the company from May to December of that year. However, in January and February of 1983, plaintiff was forced to miss work because of pressure sores. The pressure sores, which are caused by confinement to the wheelchair and which were aggravated by the mobility requirements of plaintiff's job, required surgery followed by total bed rest for several weeks. The company terminated plaintiff's employment upon his attempted return to work following this incident.

Seven months later, in October 1983, plaintiff began working at a hobby shop as a salesperson. His duties included retail sales, counting money, and responsibility for the cash drawer, as well as daily reports for the cash drawer. He also performed minor maintenance on model-scale motors, a service provided by the shop. Plaintiff worked in excess of forty hours per week, earning $4.25 per hour. The employer believed that plaintiff was a "very good" employee and had no problems as a salesperson, although he testified that plaintiff could not lift heavy objects, which was at times required by the job. The employer also acknowledged that, because the hobby shop had grown, an employee who was more knowledgeable in the field had been hired to replace plaintiff. (Plaintiff had voluntarily terminated his employment at the shop in June of 1984.)

Although plaintiff admitted that he was able to perform all of the tasks required of him by the employer, his physical impairment caused him to miss a considerable amount of time from work. During the approximately nine-month period that plaintiff worked at the hobby shop, he was forced to miss eight weeks because of pressure sores. Plaintiff also suffers from periodic kidney and bladder infections that require medical attention and occasional absences from work.

Plaintiff began working at an auto parts store the same month that he terminated his employment at the hobby shop. Plaintiff is a "counterman" (i.e. salesperson) at the store. His duties include waiting on retail customers, procuring parts for customers from the inventory, minor inventorying of parts, and minor bookkeeping chores. Plaintiff works eight hours per day, earning $4.50 per hour. Plaintiff is a good dependable employee who does his job well. However, the employer acknowledged that plaintiff's disability has restricted him, but that plaintiff has "put up with" these restrictions. These restrictions require that plaintiff take more time to get a part for a customer or to seek assistance when retrieving a heavy part or one from the upper shelves of the store. Plaintiff also testified that these restrictions caused some customer dissatisfaction and "withdrawal." However, the employer testified that the customer complaints concerning plaintiff's limitations are few, that plaintiff is one of the better employees, and that plaintiff has assumed more responsibility (although not more duties) with the passage of time. .

In addition to the physical limitations which prohibit the plaintiff from performing all of the duties of a counterman, plaintiff has been forced to miss work due to illnesses and the need for periodic medical care. Plaintiff testified that from mid-June to August 20, 1984 (the date of the hearing), he had missed one week of work due to pressure sores.

Plaintiff also introduced evidence concerning the general limitations that his physical impairment caused. Plaintiff testified that he suffered from pressure sores, kidney and bladder infections, and pain. He testified that the only treatment for the pressure sores was total bed rest. He also estimated that he would be forced to miss "at least two months a year" from work because of the unavoidable pressure sores. He stated that it would not be possible to work when the pressure sores erupted, and that, as a paraplegic, he could not separate his health from his work capabilities. Plaintiff also testified that he could not

work as an auto mechanic or mechanic's helper because the work involves heavy labor and, therefore, no one would hire him for such a position.

Dr. Weber, one of plaintiff's treating physicians, testified as to plaintiff's considerable medical history and physical limitations. Weber's testimony on these matters essentially tracked that of plaintiff: plaintiff's pressure sores were unavoidable because of confinement to the wheelchair; that these pressure sores can be life-threatening to a paraplegic; that plaintiff must confine himself to total bed rest when the pressure sores erupt; and that plaintiff's pressure sores are aggravated because he works forty hours per week. Weber also testified that plaintiff was fifty-percent physically impaired, when considering *only* the pressure sore problems that he experienced.

Weber also testified that, even assuming plaintiff had an understanding employer who allowed him to take time off work for medical care and to treat the pressure sores, plaintiff could not hold down a steady, forty-hour per week job.

I don't think [plaintiff] is ever going to be capable of carrying out a full-time occupation.

\* \* \* \* \* \*

I am just telling you the facts. \* \* \* I see a large number of paraplegics. I do not have a single paraplegic who has a normal, eight-hour-a-day job, and I have never seen a patient like that who can maintain a normal, eight-hour job without breaking down, ever.

Weber explained that the inevitable pressure sores (i.e., "breakdowns") would forever preclude plaintiff from being a candidate for full-time employment.

VanDenHeuvel, plaintiff's treating psychologist and a vocational rehabilitation expert, also testified regarding plaintiff's psychological disability which was caused by the work-related injury, and regarding plaintiff's medical problems and physical impairment. VanDenHeuvel stated that plaintiff's psychological problems were

caused by his physical limitations and concomitant physical problems (i.e., pressure sores, kidney and bladder infections). VanDenHeuvel believed that, if not for the pressure sores, plaintiff could perform the job at the auto parts store. However, because of the excessive absences from work caused by the inevitable pressure sores, VanDenHeuvel thought that plaintiff would have difficulty in finding an employer who would hire him.

The problem is how and where are we going to find an employer who is willing to say, well, I am going to have him around this time maybe two weeks, maybe three weeks, maybe for a month, and then he is going to disappear on me for another two or three weeks. That is going to be the crucial problem.

Dr. Gunasegaram, plaintiff's urologist, also testified. His testimony essentially parroted that of plaintiff and Dr. Weber, at least insofar as plaintiff's considerable medical history is concerned. However, Dr. Gunasegaram did add two bits of information that are relevant to the extent of plaintiff's disability. First, Gunasegaram testified that plaintiff must wear an external catheter, and that because of his paralysis, plaintiff could not tell if the catheter was leaking and getting him wet. Second, Gunasegaram testified that plaintiff suffered from uncontrollable chronic muscle spasms in his legs that "are embarrassing and incapacitating." Gunasegaram estimated that plaintiff was eighty to ninety percent impaired to the body as a whole.

Both parties filed requested findings and conclusions. Plaintiff also filed a motion for attorney fees and an affidavit in support of the motion. The court filed its findings and conclusions on June 12, 1985. The pertinent findings are: (2) plaintiff's only meaningful employment prior to the accident was as a mechanic; (4) plaintiff has earned a GED, but has no other vocational training or education; (6) plaintiff cannot work a full-time job due to his physical and psychological problems and limitations; (7) plaintiff has been forced to miss at least two months of work per year be-cause of his physical impairment, and several hours per month for medical care; (8) any employment of plaintiff "is tenuous at best" because his employer must be "unusually tolerant and understanding" and make "special concessions" for plaintiff; and (9) plaintiff cannot perform the work which he was doing at the time of the accident and cannot do any work "which requires walking, bending, lifting, good mobility, standing, reaching, or requires anything that cannot be done from a sitting position."

The court's pertinent conclusion was that plaintiff is totally unable to perform the work he was doing at the time of the injury, and ninety-nine percent unable to perform any work for which he is fitted. (This "conclusion" is, in actuality, a finding of an ultimate fact. *See McCleskey v. N.C. Ribble Co.*, 80 N.M. 345, 455 P.2d 849 (Ct. App.), *cert. denied*, 80 N.M. 317, 454 P.2d 974 (1969). Accordingly, in the analysis that follows, we treat conclusion no. 1 as the finding that must be supported by substantial evidence.) The court filed an order awarding plaintiff ninety-nine percent disability benefits.

Plaintiff also filed a cost bill. Defendants objected to the cost bill. The court entered an order awarding certain costs requested by plaintiff.

## DISCUSSION

### I. Ninety-nine Percent Partial Disability

The definition of partial disability within the meaning of the Workmen's Compensation Act, NMSA 1978, Section 52–1–25, contains two tests: (1) whether the worker is partially unable to perform the work he was doing at the time of the injury; *and* (2) whether the worker is partially unable to perform *any* of the work for which he is fitted. *E.g., Medina v. Zia Co.*, 88 N.M. 615, 544 P.2d 1180 (Ct.App. 1975), *cert. denied*, 89 N.M. 6, 546 P.2d 71 (1976). The primary test for disability is the capacity to perform work. *Adams v. Loffland Brothers Drilling Co.*, 82 N.M. 72, 475 P.2d 466 (Ct.App.1970). In order to qualify for partial disability benefits, a worker must prove: (1) an inability, to

some percentage-extent, to perform the usual tasks of the work he was performing at the time of the injury; and (2) an inability, to some percentage-extent, to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience. *Cordova v. Union Baking Co.*, 80 N.M. 241, 453 P.2d 761 (Ct.App.1969); *see also Aranda v. Mississippi Chemical Corp.*, 93 N.M. 412, 600 P.2d 1202 (Ct. App.), *cert. denied*, 93 N.M. 683, 604 P.2d 821 (1979); *Medina v. Zia Co.* This two-pronged test is applicable to proceedings to reduce or terminate disability benefits. *See Jaramillo v. Kaufman Plumbing & Heating Co.*, 103 N.M. 400, 708 P.2d 312 (1985). The degree of disability is a question of fact for the trial court to determine. *See Chapman v. Jesco, Inc.*, 98 N.M. 707, 652 P.2d 257 (Ct.App.1982).

There is substantial evidence to support the trial court's finding that plaintiff is totally unable to perform the work which he was doing at the time of the injury (prong no. 1), and ninety-nine percent unable to perform any work for which he is fitted (prong no. 2). Defendants do not argue with the court's finding regarding the first prong of the test. A finding of total disability certainly satisfies the first prong of the partial disability test. It is the finding regarding the second prong of the test that defendants challenge.

In reviewing the findings of fact of a trial court in a worker's compensation proceeding, this court is subject to the rule that such findings shall not be disturbed if supported by substantial evidence. *Cardenas v. United Nuclear Homestake Partners*, 97 N.M. 46, 636 P.2d 317 (Ct.App. 1981); *Lyon v. Catron County Commissioners*, 81 N.M. 120, 464 P.2d 410 (Ct.App. 1969), *cert. denied*, 81 N.M. 140, 464 P.2d 559 (1970). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 428 P.2d 625 (1967). This court is bound to view the evidence in the light most favorable to support the trial court's findings, *Mirabal v. Robert E. McKee,*

*General Contractor, Inc.*, 77 N.M. 213, 421 P.2d 127 (1966); *Salazar v. City of Santa Fe*, 102 N.M. 172, 692 P.2d 1321 (Ct.App. 1983), *cert. quashed*, 102 N.M. 225, 693 P.2d 591 (1985), and to disregard all evidence unfavorable to that finding, *Duran v. New Jersey Zinc Co.*, 83 N.M. 38, 487 P.2d 1343 (1971); *Salazar*. It is for the trier of fact to weigh the testimony, determine the credibility of the witnesses, reconcile inconsistent statements of the witnesses, and determine where the truth lies. *Montano v. Saavedra*, 70 N.M. 332, 373 P.2d 824 (1962); *Perez v. International Minerals & Chemical Corp.*, 95 N.M. 628, 624 P.2d 1025 (Ct.App.1981). The appellate court may not reweigh the evidence, *id.*, nor substitute its judgment for that of the trier of fact. *Ideal Basic Industries, Inc. v. Evans*, 91 N.M. 460, 575 P.2d 1345 (1978); *Salazar*.

■ The fact that a workman has sought and obtained post-injury employment does not disqualify him from receiving workmen's compensation benefits. *See Roybal v. County of Santa Fe*, 79 N.M. 99, 440 P.2d 291 (1968); *Maes v. John C. Cornell, Inc.*, 86 N.M. 393, 524 P.2d 1009 (Ct.App. 1974); *see also Clymo v. United Nuclear Corp.*, 94 N.M. 214, 608 P.2d 526 (Ct.App. 1980).

■ The evidence which supports a finding that plaintiff is ninety-nine percent unable to perform any work for which he is fitted is that: he is a twenty-five year old paraplegic, confined to a wheelchair; he has completed the eleventh grade and has earned his GED, but has no other vocational training or education; his only previous employment was as a mechanic's helper, a job that he is totally unable to perform; he is totally unable to lift heavy objects, to reach for objects on upper shelves, or to perform any other type of general physical labor; he suffers from very serious complications caused by his paraplegia which limit his capabilities and reliability—plaintiff must miss at least two months of work per year due to illness and several hours each month for general medical care; his para-

plegia causes his legs to spasm uncontrollably and he has no bladder control; he has been hired by three sympathetic employers (although there is no testimony on this matter regarding the medical supply employer, the nature of the business indicates that the employer was aware of, and understanding of plaintiff's disability); he was terminated by one of those employers after a typical extended absence; his employers do not require him to perform all of the duties the other employees perform; he must seek help from other employees to lift heavy objects, or objects on upper shelves; and, finally, Weber's testimony that plaintiff cannot hold down a full-time job, as an average person could, and VanDenHeuvel's testimony that plaintiff may be forced into leaving his job.

Clearly, the court's finding of ninety-nine percent disability is supported by substantial evidence.

## II. Credit For Overpayment

Defendants concede that resolution of this issue is dependent upon the outcome of issue I. For the reasons stated in the discussion of issue I, there was substantial evidence to support the court's award of one percent credit for overpayment of compensation benefits (i.e., one hundred percent minus ninety-nine percent equals one percent overpayment).

## III. Limiting Credit For Overpayment

In support of their argument on this issue, defendants rely on the majority opinion of *Jaramillo v. Kaufman Plumbing & Heating Co.*, 24 SBB 1032 (Ct.App.1985). However, the supreme court reversed this court on the reimbursement issue in *Jaramillo*, (*Jaramillo II*) 103 N.M. 400, 708 P.2d 312 (1985). The supreme court expressly adopted Judge Bivins' specially concurring opinion as its own. Accordingly, this issue must be analyzed pursuant to Judge Bivins' opinion.

█ As we read that opinion, equitable principles may require retroactive application of credit for overpayments to defendants in an appropriate case. *See Jaramil-*

*lo,* 708 P.2d at 319. Allowing retroactive credit serves the goal of ensuring "fundamental fairness" to both parties, *see Paternoster v. La Cuesta Cabinets, Inc.,* 101 N.M. 773, 689 P.2d 289 (Ct.App.1984); it furthers the primary goal of the Act (to protect an employee from want) while also recognizing that the employer should be reimbursed for overpayments made in good faith. However, based on the facts of this case, we do not believe that remand of this case, for a determination of what date plaintiff's disability diminished and whether defendants are entitled to a credit for overpayments made, is warranted.

█ In the first instance, we do not believe that this is the "appropriate case" that Judge Bivins was referring to in *Jaramillo.* Unlike the defendants in *Jaramillo,* defendants here make absolutely no allegation that plaintiff defrauded them or was otherwise unjustly enriched. Moreover, the plaintiff in *Jaramillo* was possibly overpaid by several thousand dollars, depending on when the trial court found that his disability diminished and to what extent. Here, on the other hand, plaintiff has been overpaid approximately $42.00 (assuming that his disability diminished by one percent as of October 1, 1983, the date he began working for the hobby shop).

Secondly, even ignoring the *Jaramillo* rule, because the total potential credit for overpayments is no more than $42.00, this issue can be disposed of on *"de minimus"* grounds. *Cf. Hernandez v. Mead Foods, Inc.,* 104 N.M. 67, 716 P.2d 645 (Ct.App. 1986).

## IV. Award of Attorney Fees

█ An award of attorney fees is proper in a disability reduction or termination hearing, provided that plaintiff's attorney has preserved a benefit for the plaintiff. *Jaramillo.* In this case, it is obvious that an award of attorney fees is appropriate because plaintiff's attorney successfully preserved ninety-nine percent of plaintiff's disability benefits. *Id.* Defendants concede as much in their brief. However,

defendants do argue that the award of $5,000 in attorney fees to plaintiff is an abuse of discretion because the trial court failed to consider the hourly fee normally charged by plaintiff's counsel, or the fee commonly charged by workmen's compensation attorneys in Albuquerque. Essentially, defendants argue that $5,000 is an excessive fee for the twenty hours of time expended by plaintiff's attorney in defending against the motion to reduce or terminate benefits.

The court's findings on the question of attorney fees are not very enlightening. Plaintiff's sole requested finding on the issue is no more helpful. In fact, plaintiff requested essentially the same finding as the court actually made. In *Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 695 P.2d 483 (1985), the supreme court stated that the trial court must make findings on the *Fryar* factors on which the parties have presented evidence. *Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718 (1979) (Fryar I). This court, in *Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 697 P.2d 156 (Ct.App.1985), read *Woodson* to require that the trial court make specific findings on all *Fryar* factors on which evidence has been presented. The question, then, is whether or not the trial court's findings are specific findings. If not, *Sanchez* would appear to require remand for this purpose.

The court's sole finding on this issue is merely a restatement of the *Fryar* factors. Based on a recitation of these factors, the court concluded that $5,000 is a reasonable fee in this case. Plaintiff's attorney filed an affidavit with her motion to recover attorney fees. The affidavit, however, merely provides "evidence" on three of the *Fryar* factors (i.e., (2) time and effort expended by the attorney; (6) the skill, experience and reputation of the attorney (although very obliquely); and (7) the relative success of the worker in the court proceedings). *See Woodson.* As previously noted, the court made no specific findings with respect to any of these three factors.

 Notwithstanding this apparent failure by the trial court, we do not believe that remand for this purpose is necessary here. Defendants did not file any requested findings with regard to the *Fryar* factors. Nor did they file any affidavits to support a finding on the question of average hourly fee in the community or of plaintiff's attorney. Moreover, they make no claim that they otherwise offered any "evidence" at the fee hearing in support of such a finding. The failure of a party to request a finding on the amount of fees normally charged precludes a review of the claimed error on appeal. *Paternoster v. La Questa Cabinets, Inc.* We do not think that the waiver rule is inconsistent with the *Woodson/Sanchez* rule because the former rule requires specific findings on factors on which the parties have presented evidence.

Moreover, while the court's sole finding on the issue lacks specificity, defendants do not challenge on that basis. Although defendants do argue that the fee is excessive, they appear to do so on an hourly rate and/or customary fee basis. While the fee may be excessive if only the hourly rate or customary fee is considered, the other *Fryar* factors must also be considered. *Woodson.* In particular, the fact that plaintiff's attorney was ninety-nine percent successful in defending against the motion, and that defendants have extensively contested the issue of disability are important factors, especially in a case as speculative as this one. *Compare Bartlett v. Shaw,* 76 N.M. 753, 418 P.2d 533 (1966) (court affirmed award of twenty percent disability to plaintiff).

## V. Costs

The statute in question, NMSA 1978, Section 52–1–35(B), was amended in 1983. Defendants concede that plaintiff is correct in this regard. Defendants cite no other authority in support of their claim of error on this issue. *But see Sedillo v. Levi-Strauss Corp.,* 98 N.M. 52, 644 P.2d 1041 (Ct.App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982), *and Lujan v. Circle K Corp.,* 94 N.M. 719, 616 P.2d 432 (Ct.App.1980) (both of which addressed Section 52–1–35(B) prior to amendment).

■ The language of amended Section 52-1-35(B) appears to have liberalized the standard by which a court may award certain costs. The amendment appears to have authorized a discretionary standard in the trial court. Such an interpretation of the amended section would be consistent with the general rule that the Act is to be liberally construed in favor of the worker, so long as the construction is not unreasonable or strained. *See Anaya v. New Mexico Steel Erectors, Inc.*, 94 N.M. 370, 610 P.2d 1199 (1980); *Briscoe v. Hydro Conduit Corp.*, 88 N.M. 568, 544 P.2d 283 (Ct.App.1975). Under such a standard, the question on review is whether the trial court's action is arbitrary or capricious. *E.g., State v. Madrigal*, 85 N.M. 496, 513 P.2d 1278 (Ct.App.), *cert. denied*, 85 N.M. 483, 513 P.2d 1265 (1973).

■ We do not agree with defendants that the reports of the doctors and the telephone conversations with the doctors could not be reasonably necessary to the trial of this case. Obviously, the reports of the doctors and conversations with them aided plaintiff in defending against the motion to terminate or reduce. Notwithstanding the fact that the reports were not introduced at trial, they certainly assisted plaintiff in preparing for the depositions of the doctors. The reports and conversations also prepared the plaintiff so that no unexpected surprises arose at the depositions. Based on these facts, we do not believe that the trial court erred in awarding the challenged costs on an abuse of discretion standard.

For all of the foregoing reasons, the trial court will be affirmed on all issues. Plaintiff will be awarded $2,000 for attorney fees on appeal.

IT IS SO ORDERED.

DONNELLY and FRUMAN, JJ., concur.