823 P.2d 334

**Patricia FEESE, Claimant–Appellant/Cross–Appellant,**

v.

**U.S. WEST SERVICE LINK, INC., Self–Insured, Respondent–Appellant/Cross–Appellee.**

**No. 12546.**

Court of Appeals of New Mexico.

Oct. 28, 1991.

David Duhigg, Duhigg, Cronin & Spring, P.A., Bruce P. Moore, Albuquerque, for claimant-appellee cross-appellant.

Ieva L. Karklins, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for respondent-appellant cross-appellee.

## OPINION

ALARID, Chief Judge.

Employer appeals a workers' compensation administration disposition order granting disability benefits to claimant. Employer raises three issues on appeal: 1) whether claimant is entitled to temporary total disability benefits from August 11, 1989, to April 1, 1990; 2) whether there was sufficient evidence to support the finding of causal connection; and 3) whether the award of $12,000 in attorney fees was

excessive in this case. Claimant cross-appeals raising issues regarding the constitutionality of the $12,500 cap on attorney fee awards in workers' compensation cases. We affirm.

## FACTS

Claimant was sixty years old at the time of her accident and had been working for the telephone company as an operator since 1948. In March of 1989, she suffered an accidental injury when she tripped and fell over some construction work while entering the building where she worked. She injured both her knees at that time. She was treated and remained off work until April 26, 1989. During that time, a new contract was being negotiated between the telecommunications workers and the telephone company. Because of concern about pension benefits, claimant elected to retire under the terms of the existing contract. Her retirement was set for August 11, 1989. However, over the years claimant had accumulated a significant amount of unused vacation and compensatory time and she elected to take that time beginning on June 22, 1989.

While at home on July 10, 1989, claimant fell when her right knee gave out. She broke her shoulder. After the injury on July 10, 1989, claimant was removed from pre-retirement vacation status and placed on sick benefits. Claimant retired from the telephone company effective August 12, 1989. Thereafter, she continued treatment for her broken shoulder and reached maximum medical improvement on May 3, 1990.

## TEMPORARY TOTAL DISABILITY

Claimant was awarded temporary total disability benefits from August 11, 1989, to April 1, 1990. Employer argues that because claimant had taken voluntary retirement, she could not receive temporary total disability benefits for that time. In support of this argument, employer cites out-of-state authority holding that a person who has retired from the work force has no lost wages and is, therefore, not entitled to disability benefits. *See, e.g., Karr v. State Accident Ins. Fund Corp.*, 79 Or.App. 250,

719 P.2d 35, 36, *review denied*, 301 Or. 765, 726 P.2d 377 (1986). These cases, however, rely on workers' compensation statutes that define disability in terms of lost wages.

■ In New Mexico, disability is defined as "an impairment to a worker resulting by reason of an accidental injury * * * which prevents the worker from engaging, for remuneration or profit, in any occupation for which he is or becomes fitted by age, training or experience." NMSA 1978, § 52–1–25(A) (Repl.Pamp.1987). We are concerned with claimant's capacity to perform work, not with whether or not she lost wages from her accident. She may be entitled to disability benefits even if she is working for some wage. *See Amos v. Gilbert W. Corp.*, 103 N.M. 631, 634, 711 P.2d 908, 911 (Ct.App.1985).

The determination of disability is a fact question and if there is substantial evidence in the record to support a finding of disability, this court must uphold it. *Adams v. Loffland Bros. Drilling Co.*, 82 N.M. 72, 74, 475 P.2d 466, 468 (Ct.App. 1970). Whether or not an employee has removed herself from the labor market is a question of fact. *See Schroeder v. Highway Servs.*, 403 N.W.2d 237 (Minn.1987).

■ In New Mexico, disability benefits are denied if a claimant, through voluntary conduct unconnected with his injury, takes himself out of the labor market. *Aranda v. Mississippi Chem. Corp.*, 93 N.M. 412, 414, 600 P.2d 1202, 1204 (Ct.App.1979), *cert. denied*, 93 N.M. 683, 604 P.2d 821 (1979). The fact that claimant retired from the telephone company does not alone establish that she took herself out of the labor market. Many people take early retirement from one job to move on to another completely different job. Therefore, retirement does not establish that claimant voluntarily took herself out of the labor market, thereby making her unqualified for disability benefits. *See Franco v. Industrial Comm'n*, 130 Ariz. 37, 633 P.2d 446, 450 (Ct.App.1981).

The issue before us is to determine whether the evidence presented supports

the judge's determination that claimant had not removed herself from the labor market and was, therefore, entitled to disability benefits. *See Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 127, 767 P.2d 363, 366 (Ct.App.) (discussing whole record standard of review for workers' compensation cases), *cert. denied*, 109 N.M. 33, 781 P.2d 305 (1988). There is evidence in the record that claimant retired from the telephone company with the intention of seeking other employment. Claimant testified that she intended to remain in the work force and continue to work. She testified that she could not immediately look for work after retirement because of her injury. She testified that as of April 1, 1990, she could possibly return to work and she had begun searching for a job. While there was some evidence that claimant was going to travel with her husband after her retirement and before starting another job, there was also evidence that those plans changed before her injury.

■ From August 11, 1989, when she retired, to April 1, 1990, when she was able to return to work, claimant was totally disabled. She was totally disabled because she was unable to perform any work due to an accidental injury. Her ability to work had nothing to do with the fact that she had retired. There was sufficient evidence on the record as a whole to support the decision by the judge that from August 11, 1989, until April 1, 1990, claimant was temporarily totally disabled.

## CAUSAL CONNECTION

■ Employer also argued that there was insufficient evidence to support the causal connection between the disability which arose in July and the accidental injury of March 1989. When the employer contests the causal connection between the accidental injury and the disability, worker must present medical testimony that shows the causal connection to a medical probability. NMSA 1978, § 52-1-28(B) (Repl. Pamp.1987); *Medrano v. Ray Willis Constr. Co.*, 96 N.M. 643, 646, 633 P.2d 1241, 1244 (Ct.App.1981). Employer claims that the testimony here only established

that any one of several factors could have been the legal cause of claimant's disability. *Renfro v. San Juan Hosp., Inc.*, 75 N.M. 235, 238, 403 P.2d 681, 684 (1965) (burden not met where several factors could have caused the disability).

■ We do not agree. Three doctors testified by deposition. Dr. Chestnut, claimant's treating physician, testified that claimant had been placed at risk of having problems because of the weakness of her legs as a result of her initial fall. He testified that the fall on July 10 was a consequence of the problems with her legs and knees, disabilities resulting from the original injury. He testified that the shoulder injury was, to a medical probability, secondary to the injury of her knee on March 1. *See Gutierrez v. Amity Leather Prods. Co.*, 107 N.M. 26, 29, 751 P.2d 710, 713 (Ct.App.1988).

Dr. Daugherty, claimant's family physician, testified that there was a direct connection between claimant's knee injury and her fall when she broke her shoulder. Where the second injury is directly and proximately attributable to the original work-related injury, compensation benefits are payable.

Dr. Jones, employer's physician, testified that claimant had other problems that could make her susceptible to falls. He testified that it would be speculation to blame the July fall on the March injury. It is for the finder of fact to weigh the testimony and determine where the truth lies. *Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 71–72, 716 P.2d 645, 649–50 (Ct.App. 1986). Here there is sufficient medical evidence that, to a medical probability, the July fall was caused by the injury and disability resulting from the March fall.

## ATTORNEY FEES

■ Employer argues that the award of $12,000 in attorney fees is excessive in this case. The amount of the award is within the discretion of the judge. However, certain factors must be taken into consideration. *Fryar v. Johnsen*, 93 N.M. 485, 488, 601 P.2d 718, 721 (1979). In addition to the statutory requirements, the following

factors are subject to consideration: the chilling effect of miserly fees upon the ability of an injured workman to obtain adequate representation; the time and effort expended by the attorney; the extent to which the issues were contested; the novelty and complexity of the issues involved; the fees normally charged in the locality for similar legal services; the ability, experience, skill and reputation of the attorney; the relative success of the workman in the court proceeding; the amount involved; and the rate of inflation. Claimant's attorney testified that he spent sixty hours on this case, including consultation with the claimant and writing a detailed brief on certain issues. Counsel testified that his practice is limited to workers' compensation and personal injury cases and that he has practiced in New Mexico since 1977. He testified that no offers were made prior to trial and that the present value of the award was $66,611. He further testified that claimant prevailed on all issues but the safety device. Based on this testimony, the judge found that claimant was entitled to $12,000 in attorney fees.

■ Employer argues that because the judge did not make findings with regard to the evidence on the *Fryar* factors, the award must be reversed. *See Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 339, 695 P.2d 483, 489 (1985) (requires trial court to make findings on *Fryar* factors on which parties present evidence). We believe, however, that findings need not be made in a case such as this where the evidence presented by claimant's counsel, which would support the award, was not contested and the ultimate finding and conclusion stating the amount to be awarded are supported by the evidence. *See Bower v. Western Fleet Maintenance*, 104 N.M. 731, 726 P.2d 885 (Ct.App.1986). Furthermore, neither party requested that the judge make findings. Therefore, the fact that the judge failed to make specific findings with regard to the *Fryar* factors does not require remand. *Id.*

Our review of the evidence presented at the hearing on attorney fees shows that it was sufficient to support an award of $12,-000 in attorney fees, approximately 20% of the present value of the award. *See Woodson,* 102 N.M. at 338, 695 P.2d at 488.

## CROSS–APPEAL

■ Claimant argues that the limit of $12,500 for attorney fees in workers' compensation cases, NMSA 1978, § 52–1–54(G) (Repl.Pamp.1987), is unconstitutional in that it denies her a right to a meaningful appeal, her right to equal protection under the laws, and her right to due process. We decline to address the issues regarding the constitutionality of the attorney fee cap for two reasons.

First, the issues were not properly preserved for appeal. SCRA 1986, 12–216(A). No mention was made at the attorney fee hearing regarding the constitutionality of the cap. Moreover, we decline to consider the issues under the exceptions found in Rule 12–216(B). Second, these issues are not ripe for decision. The constitutionality of legislation is open to attack only by a person whose rights are affected thereby. *State ex rel. Overton v. New Mexico State Tax Comm'n,* 81 N.M. 28, 33, 462 P.2d 613, 618 (1969). The fees awarded in this case do not reach the cap. Where there is no showing that claimant has been deprived of equal protection and due process rights, there is no issue for decision. *See State v. Silver,* 83 N.M. 1, 2–3, 487 P.2d 910, 911–12 (Ct.App.1971).

The decision of the workers' compensation administration is affirmed.

IT IS SO ORDERED.

BIVINS and BLACK, JJ., concur.