DANIELS, Justice, specially concurring. I concur in the ultimate holding of the majority, that Mr. Gonzalez is entitled to statutory modifier benefits, but I write separately to express my concerns about our having to create a new set of nonstatutory workers’ compensation rules especially for undocumented workers. On its face, the plain language of Section 52-l-26(D) could not be more clear: A worker who is injured on the job, whether undocumented or not, is due full disability benefits until he actually returns to work earning at or above his pre-injury wage. See 1978 NMSA, § 52-1-26(D) (1990) (“If... an injured worker returns to work at a wage equal to or greater than the worker’s pre-injury wage, the worker’s permanent partial disability rating shall be equal to his impairment and shall not be subject to [modifications].” (emphasis added)). Nothing in the statutory language or history makes an unaccepted job offer — whether reasonable or illusory — a substitute for this textual requirement. See Gonzales v. Sharp & Fellows Contracting Co., 51 N.M. 121, 126, 179 P.2d 762, 765 (1947) (“We have said more than once that when the language of a statute is plain and unambiguous there is no occasion to resort to the rules of statutory construction, and that such statute must be given its plain and obvious meaning.”); see also Sanchez v. Bernalillo County, 57 N.M. 217, 226, 257 P.2d 909, 915 (1953) (“As has been said many times, it is not the province of the court, but of the legislature, to make changes in the provisions of statute law. Where the lawmaking body has specified clearly who shall be entitled to compensation benefits and under what circumstances, the court should not alter the conditions required to obtain such benefits.”). On a straightforward plain language application of the statute, Mr. Gonzales was entitled to his modifier benefits until he actually returned to work at his pre-injury wage. The reason we are having to create new rules to substitute for the statutory text has its origins in Jeffrey v. Hays Plumbing & Heating, 118 N.M. 60, 64, 878 P.2d 1009, 1013 (Ct. App. 1994), which disregarded the plain language of Section 52-1-26(D) and instead applied the historical principle that “[i]n New Mexico, disability benefits are denied if a claimant, through voluntary conduct unconnected with his injury, takes himself out of the labor market.’” (quoting Feese v. U.S. West Serv. Link, Inc., 113 N.M. 92, 94, 823 P.2d 334, 336 (Ct. App. 1991), and citing Aranda v. Mississippi Chem. Corp., 93 N.M. 412, 414, 600 P.2d 1202, 1204 (Ct. App. 1979)). What Jeffrey failed to recognize was that only under the earlier version of the disability provision — which, for more than twenty years, defined disability based on the capacity to perform post-injury work — could the denial of benefits be justified when a worker refused to work. See NMSA 1953, § 59-10-12.19 (1965) (defining disability based on the “percentage-extent” of a worker’s inability “by reason of injury arising out of.. . his employment... to perform any work for which he is fitted”); accord Shores v. Charter Servs., Inc., 112 N.M. 431, 432, 816 P.2d 500, 501 (1991) (“[W]e agree that the 1963 amendment in the workers’ compensation statute changed the test of disability ... to capacity to perform work, and that to recover under the statute the worker had to show that she was wholly or partially unable to perform any work for which she was fitted.”); see also Medina v. Zia, 88 N.M. 615, 616-17, 544 P.2d 1180, 1181-82 (Ct. App. 1975) (denying disability benefits, based on the statutory language of the benefits provision, to a worker who chose not to work); Aranda v. Mississippi Chem. Corp., 93 N.M. 412, 414-15, 600 P.2d 1202, 1204-05 (Ct. App. 1979) (applying Medina and holding that a worker was entitled to disability because he did not voluntarily leave his employment); Feese, 113 N.M. at 94, 823 P.2d at 336 (Ct. App. 1991) (applying Aranda under the 1987 version of the Act defining total disability in terms of the ability to return to work and holding that retirement alone did not necessarily establish voluntarily taking oneself out of the labor market). Jeffrey did not acknowledge the fact that recent amendments to the Act had abandoned the capacity to work theory in favor of paying a worker for the permanent physical impairment suffered.[2] See, e.g., Varela v. Ariz. Pub. Serv., 109 N.M. 306, 307-08, 784 P.2d 1049, 1050-51 (1989) (recognizing the Legislature’s adoption of the current definition for permanent partial disability in 1986 based on the American Medical Association guides for physical impairment and that under this new definition, “partial disability is measured purely by the loss of physical function; loss of wages or earning power absolutely plays no part in the determination”); see also Madrid v. St. Joseph Hosp., 1996-NMSC-064, ¶ 19, 122 N.M. 524, 928 P.2d 250 (explaining how the current disability formula is used to calculate impairment and to “award proportional compensation” (internal quotation marks and citation omitted)); Smith v. Ariz. Pub. Serv. Co., 2003-NMCA-097, ¶ 15, 134 N.M. 202, 75 P.3d 418 (“Since the 1990 amendments to the Act, permanent disability is expressly defined in terms of impairment. . . . Permanent partial disability is calculated pursuant to a statutory formula and not in accordance with the worker’s ability or inability to function at work.”). By improperly relying on an earlier interpretation of the Act that used now-repealed language to encourage employment and discourage dependence on disability benefits, the Jeffrey Court impermissibly perpetuated the conclusion that “[w]e would violate the policy of encouraging employment and independence from compensation benefits if we interpreted Section 52-1-26 to permit a worker to escape a reduction in benefits by voluntarily remaining unemployed or underemployed.” Jeffrey, 118 N.M. at 64, 878 P.2d at 1013. The WCA judge and the Court of Appeals in this case tried conscientiously to follow the judge-made policies created from whole cloth in Jeffrey and its progeny by holding that the worker had taken himself out of the legal job market by entering the country unlawfully. In order for us to reverse the W CA and Court of Appeals without relying on the statute’s plain language and acknowledging that the Jeffrey interpretation of the Act was wrong, we now have to create a new set of rules and exceptions for undocumented workers — based on new equitable concerns of compliance with federal law in a worker’s initial hiring, none of which can be found anywhere in the plain language or expressed policies in the Act. Granted, if one ignores the statutory text, our judicially created policies, exceptions, and exceptions to exceptions seem like fair ways to deal with compensation for injured workers. But judges are not legislators, and my discomfort arises from the reality that real legislators have not made those decisions. On the other hand, the Legislature has not seen fit to amend the statute to address any perception on its part that the judicial branch has been misinterpreting the statutory purpose for almost two decades. It may well be that the Legislature believes we are on the right track, and perhaps we should stay the course until we hear otherwise from our colleagues in the legislative branch. The Jeffrey approach, rightly or wrongly, has become an integral part of our workers’ compensation administrative law and jurisprudence. It is also significant that no party has made a principled argument in this case for our disregarding the principles of stare decisis and reversing long-standing precedent. See State v. Swick, 2012-NMSC-018, ¶ 17, 279 P.3d 747 (detailing factors that should be addressed by a litigant seeking to reverse existing precedent). The Jeffrey line of precedent, including the majority Opinion in this case, therefore remains the controlling interpretation of the statutory policies we honor in applying the provisions of the Act. CHARLES W. DANIELS, Justice Part of the difficulty in interpreting this provision is understanding its statutory history, including the numerous amendments made in 1986, 1987, 1989, and 1990 and the relevant caselaw interpreting these amendments. See 1965 N.M. Laws, ch. 295, §19; 1986 N.M. Laws, ch. 22, §§ 5, 12; 1987 N.M. Laws, ch. 235, § 12; 1989 N.M. Laws, ch. 263, § 18; and 1990 N.M. Laws 2nd Sess., ch. 2, § 11.