This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**KEN KETCHERSIDE,**

    Worker-Appellant,

v.                                                  **No. 33,454**

**LOVELACE REHAB HOSPITAL and**
**CCMSI,**

    Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Shanon S. Riley, Workers' Compensation Judge**

Rod Dunn
Albuquerque, NM

for Appellant

Camp Law, LLC
Minerva Camp
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}    Ken Ketcherside (Worker) filed for workers' compensation benefits alleging that he was injured while working for Lovelace Rehab Hospital (Employer). The

workers' compensation judge (WCJ) found that Worker's claim was not compensable because Worker failed to establish that any of his claimed disabilities were a natural and direct result of work related injuries. We affirm.

**BACKGROUND**

{2}     Worker was employed as a registered nurse with Employer and was regularly scheduled to work three consecutive days. Worker had a history of back pain and work related injuries. Worker routinely traded shifts, so that he could work two consecutive days instead of three, which allowed him to rest his back. Worker was scheduled to work April 2, 2011, through April 4, 2011. He attempted to trade shifts, but was not permitted to do so. Worker worked three consecutive days; April 2, 2011, April 3, 2011, and April 4, 2011.

{3}     On April 6, 2011, Worker was seen at Manzano Medical Clinic (MMC) and reported that toward the end of his shift on April 4, 2011, he experienced low back pain and pain radiating into his left leg. Worker also completed an employee accident/injury report indicating that the exacerbation of his back injuries occurred because he was "forced to work too many days in a row." Worker was released back to work on light duty and was treated by Dr. John Henry Sloan (Sloan) at MMC through May 2011. In December 2011 Worker saw Dr. Thomas Whalen (Whalen) concerning ongoing back and leg pain.

**{4}** Worker was notified that he would not receive workers' compensation benefits through Lovelace. Worker's claim for benefits was denied because there was not a specific event to which his injury could be attributed. Worker filed a complaint with the Workers' Compensation Administration. A hearing was held on the merits of Worker's claim and the WCJ found that Worker had failed to establish that his disabilities resulted from work related injuries sustained on April 2, 2011, April 3, 2011, or April 4, 2011. The WCJ concluded that Worker's claim for benefits was not compensable. This appeal followed.

**DISCUSSION**

**{5}** The Workers' Compensation Act (the Act), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2013), provides that an injured worker is entitled to workers' compensation benefits if "at the time of the accident, the employee is performing service arising out of and in the course of his employment[.]" Section 52-1-9(B). " 'Arising out of' and 'in the course of employment' are two distinct requirements." *Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2014-NMCA-019, ¶ 8, 317 P.3d 866 (quoting *Hernandez v. Home Educ. Livelihood Program, Inc.*, 1982-NMCA-079, ¶ 9, 98 N.M. 125, 645 P.2d 1381). In order for a claimant to be entitled to compensation, both of the requirements for "arising out of" and "in the

3

course of employment" must be met. *Garcia v. Homestake Mining Co.*, 1992-NMCA-018, ¶ 6, 113 N.M. 508, 828 P.2d 420 (internal quotation marks and citation omitted).

{6}    An injury occurs in the course of employment, if it "takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is reasonably fulfilling the duties of employment or doing something incidental to it." *Chavez v. ABF Freight Sys., Inc.*, 2001-NMCA-039, ¶ 11, 130 N.M. 524, 27 P.3d 1011 (internal quotation marks and citation omitted). In the present case, the parties do not dispute that Worker's injury occurred in the course of his employment. Thus, the issues presented in this appeal are related to the WCJ's determination that Worker failed to show that his injury arose out of his employment.

{7}    For an injury to arise out of employment, the injury must have been caused by a risk "reasonably incident to claimant's work[,]" and the injury must have "flowed from the risk as a rational consequence." *Flores v. McKay Oil Corp.*, 2008-NMCA-123, ¶ 10, 144 N.M. 782, 192 P.3d 777 (internal quotation marks and citation omitted). "When the employer contests the causal connection between the accidental injury and the disability, [the] worker must present medical testimony that shows the causal connection to a medical probability." *Feese v. U.S. W. Serv. Link, Inc.*, 1991-NMCA-121, ¶ 10, 113 N.M. 92,  823 P.2d 334; *see* § 52-1-28(B) ("In all cases where the employer or his insurance carrier deny that an alleged disability is a natural and

4

direct result of the accident, the worker must establish that causal connection as a probability by expert testimony of a health care provider . . . testifying within the area of his expertise.").

{8}     Here, Worker challenges the WCJ's determination that he failed to establish a causal connection between his claimed disabilities and a work related accident. Specifically, Worker argues that the WCJ erred in finding that he failed to establish, within a reasonable degree of medical probability, that his claimed disabilities were a natural and direct result of work related injuries during the relevant time.

**Standard of Review**

{9}     We review the findings of the WCJ under a whole record standard of review. *Moya v. City of Albuquerque*, 2008-NMSC-004, ¶ 6, 143 N.M. 258, 175 P.3d 926. Whole record review involves a review of all the evidence bearing on the WCJ's decision in order to determine if there is substantial evidence to support the result. *Leonard v. Payday Prof'l.*, 2007-NMCA-128, ¶ 10, 142 N.M. 605, 168 P.3d 177. "We view the evidence in the light most favorable to the decision." *Dewitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341. "Substantial evidence on the record as a whole is evidence demonstrating the reasonableness of an agency's decision," and we will not "reweigh the evidence nor replace the fact finder's conclusions with our own." *Id.* "Where the testimony is conflicting, the issue on

appeal is not whether there is evidence to support a contrary result, but rather whether the evidence supports the findings of the trier of fact." *Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320 (internal quotation marks and citation omitted).

**Substantial Evidence Supports the WCJ's Decision**

**Worker's Testimony**

{10}    Worker testified that he had pre-existing back and leg pain resulting from several back injuries dating back to 2002. Worker explained that he was upset about having to work a third consecutive shift on April 4, 2011, because he was concerned that it would cause him increased back pain. Worker stated that he experienced a sudden sharp pain in his back and leg after moving a patient up in bed without assistance. This testimony was consistent with testimony Worker gave during his deposition; that toward the end of Worker's shift on April 4, 2011, he was moving a heavy patient up in bed and felt a sharp pain in his back and shooting down his leg.

**Sloan's Testimony**

{11}    In lieu of hearing testimony, Sloan's deposition testimony was admitted as an exhibit. Sloan testified that he had treated Worker for back injuries and back pain intermittently from 2004 to 2011. Worker had an MRI in January 2005 which revealed a small to medium sized disc herniation. A second MRI of Worker's lumbar spine,

performed in January 2006 showed the same degree of herniation. In 2009, Worker was treated for severe back and radiating leg pain that he experienced after a shift at work.

{12}    Worker was not seen at MMC between April 2009 and April 2011. When Sloan saw Worker on April 29, 2011, he asked Worker if something specific had happened on April 4, 2011, to trigger his pain. Worker attributed the pain to working three consecutive days.

{13}    Because Worker could not identify specifically what caused the pain, Sloan ordered another MRI of Worker's spine and a nerve conduction study (EMG) to assist in diagnosis. The MRI, performed in May 2011 showed a small disc herniation consistent with Worker's previous MRI results. The MRI did not show a change in Worker's condition from the previous MRIs in 2005 and 2006. The EMG revealed no nerve abnormalities, and did not indicate a recent injury. Sloan concluded that Worker's increased pain was not a result of a work related injury. Sloan attributed Worker's symptoms to Worker's pre-existing discogenic problem and to the fact that Worker was "deconditioned."

{14}    When asked if Worker's symptoms could have been caused by moving a patient up in bed, as Worker described in his deposition, Sloan testified that it would be possible to sustain a back injury in that scenario. However, Sloan testified that in

7

Worker's case, because there had been no change in the MRI results and no abnormalities in the EMG, such a scenario would not explain the pain in Worker's leg.

{15} Worker's counsel showed Sloan a copy of the letter denying Worker's claim for workers' compensation benefits. The letter indicated that Worker's claim was denied because there was not a specific event that could be targeted as the cause of Worker's back pain. Worker's counsel noted that Sloan had received a copy of the letter and asked Sloan if he had relied on the letter's language regarding the absence of a "specific event" in determining that Worker's injury was not work related. Sloan testified that his conclusion was based on the absence of a specific event, along with several other factors including Worker's previous back injuries, Worker's discogenic disease, the unremarkable test results after Worker's April 4, 2011 shift, and the fact that Worker was deconditioned.

**Whalen's Testimony**

{16} Whalen's deposition testimony was also offered as an exhibit in lieu of hearing testimony. Whalen testified that he saw Worker once in December 2011. According to Whalen, Worker reported having a history of back injuries and intermittent back pain, which had subsided prior to April 2011. Worker reported that in April 2011 he experienced an acute onset of severe back pain and pain radiating down his leg after working three consecutive days, and that the pain had remained at an elevated level.

Worker also reported that he had not previously had pain going into his leg. Whalen reviewed Worker's May 2011 MRI and some of Worker's medical records from Sloan. Whalen testified that he did not obtain or review Worker's medical records related to Worker's previous back injuries in 2004, 2005, or 2006.

{17} Whalen testified that assuming that Worker's back pain had been controlled, and until Worker suddenly experienced an acute onset of back and leg pain after a change in his work pattern, then, Worker's symptoms could be attributed to his work duties. Whalen agreed that moving or lifting a patient as Worker described in his deposition was consistent with Worker's injuries and symptoms. However, Whalen confirmed that during his visit, Worker reported experiencing acute pain as a result of working three consecutive days, and did not mention moving or lifting a patient.

{18} Whalen diagnosed Worker with a longstanding history of low back pain and felt that further diagnostic testing was needed. Whalen testified that the disc herniation visible on Worker's MRI could be the result of a chronic longstanding condition or could be caused by a specific injury. However, based on Worker's report, that he had not experienced leg pain prior to April 2011, Whalen felt that Worker's condition was acute, or related to a specific injury. When asked how his opinion regarding the cause of Worker's condition would change knowing that Worker had previously experienced radiating leg pain, Whalen replied that evidence of a pattern of radiating

leg pain would indicate a previous disc injury and a chronic disc problem rather than a recent injury. Considering Worker's pre-existing conditions and the lack of conclusive testimony regarding the cause of Worker's increased pain, we conclude that WCJ's determination that Worker failed to meet his burden under Section 52-1-28, is supported by substantial evidence.

{19}     Worker argues that the WCJ's denial of his claim was erroneously based on Sloan's testimony that Worker's symptoms were not work related. According to Worker, Worker's initial claim denial, which cited the absence of a specific event to which Worker's injury could be attributed, misinformed Sloan about the legal requirements under the Workers' Compensation Act. Worker contends that Sloan then based his testimony regarding the causation of Worker's condition, on his mistaken belief that an injury is not work related if there is not a specific injurious event. And, Worker argues, because Sloan's testimony was based on a fundamental misapprehension of the law, it cannot "provide evidence on the issue of causation." Worker urges this Court to disregard Sloan's testimony and reverse the WCJ's decision based on Whalen's testimony alone. We decline to do so.

{20}     Our review of the record reveals no support for Worker's assertions. Sloan testified that his opinion that Worker's condition was not causally connected to his work was based on several factors including: Worker's history of back injuries and

10

treatment for back and radiating leg pain, Worker's MRI and EMG results which showed no evidence of a recent injury, Worker's report that his pain increased after working three consecutive days, and Worker's physical deconditioning. Sloan also testified that his opinion was not based on the denial letter's language regarding the absence of a specific event and Worker did not offer any evidence to controvert this testimony.

{21}     Moreover, in asserting that the WCJ's decision was based solely on Sloan's testimony regarding the lack of a specific event, Worker misconstrues the basis of the WCJ's decision. The WCJ made several findings in support of her conclusion that Worker failed to establish a causal connection between his disabilities and a work related injury. The WCJ *did* find that Sloan remained steadfast in his opinion that Worker's symptoms were not work related. However, the WCJ also found that Worker was inconsistent in his reporting of the injury, initially reporting to both Sloan and Whalen that his symptoms developed after working three straight days and later testifying that he injured his back assisting a patient. The WCJ further found that Whalen's testimony regarding the cause of Worker's injuries was not conclusive.

{22}     To the extent that Worker is asking this Court to re-weigh the medical testimony in this case, we decline to do so. *See Dewitt*, 2009-NMSC-032, ¶ 22 ("[W]eighing evidence and making credibility determinations are uniquely within the

11

province of the trier of fact, we will not reweigh the evidence nor substitute our judgment for that of the WCJ, unless substantial evidence does not support the findings."); *see also Levario v. Ysidro Villareal Labor Agency*, 1995-NMCA-133, ¶ 21, 120 N.M. 734, 906 P.2d 266 ("Generally, when there is conflicting medical testimony concerning causation, the reviewing court will defer to the finder of fact" because "it is the WCJ's prerogative to determine the weight to be given to the testimony." (alteration, internal quotation marks, and citation omitted)).

**CONCLUSION**

{23}     For the foregoing reasons, we affirm.

{24}     **IT IS SO ORDERED.**


_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**


_____

**TIMOTHY L. GARCIA, Judge**


_____

**J. MILES HANISEE, Judge**