805 P.2d 633

**KENNECOTT COPPER CORPORATION, Claimant–Appellee,**

v.

**Fabian CHAVEZ, State Superintendent of Insurance, and New Mexico Subsequent Injury Fund, Respondents–Appellants.**

**No. 12063.**

Court of Appeals of New Mexico.

Dec. 13, 1990.

---

Paul R. Koller, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for claimant-appellee.

Todd E. Farkas, Nathan H. Mann, Gallagher, Casados & Mann, P.C., Sp. Asst. Attys. Gen., Albuquerque, for respondents-appellants.

## OPINION

APODACA, Judge.

The New Mexico Subsequent Injury Fund (Fund) appeals the workers' compensation judge's (judge) determination that the Fund is liable for 50% of payments made by employer to worker. The Fund raises several issues. It initially argues that employer had insufficient knowledge of any preexisting impairment to allow employer to recover, despite the late filing of the certificate of preexisting impairment. *See Fierro v. Stanley's Hardware*, 104 N.M. 50, 716 P.2d 241 (1986) (where employer has actual knowledge of impairment before the subsequent injury, necessary certificate may be filed after the subsequent injury). In this appeal, worker was disabled in July 1986. Because worker became permanently disabled two months after the effective date of the 1986 amendments, these terms are controlling. NMSA 1978, § 52–2–6 (Cum.Supp.1986); *Rader v. Don J. Cummings Co.*, 109 N.M. 219, 784 P.2d 38, 41 (Ct.App.1989) (date injury compensable controls as to which version of statute governs claim; 1986 amendments effective May 21, 1986). Based on several other contentions involving substantial evidence review, the Fund also contends the judge's decision was erroneous even if employer had the required knowledge of the preexisting impairment. We hold that employer had actual knowledge of the preexisting condition and that substantial evidence otherwise supported the judge's determination. We therefore affirm the judge's decision.

## FACTS

Worker was employed by employer from 1970 through 1986. In August 1977, he suffered a knee injury playing baseball. The knee later disabled worker in September 1977, while he was at work. He underwent surgery to remove cartilage in 1978 and spent nine months recuperating from the surgery before returning to work. Worker was not terminated from his employment before or during the nine-month recuperation period. Following his return to work, worker performed all the tasks required of his position and experienced no difficulty with his knee.

In July of 1986, worker reinjured his knee while attempting to jump onto a bulldozer ladder. On this occasion, he tore a ligament in the knee. After this later accident, employer settled a compensation claim filed by worker and then filed the action underlying this appeal, seeking reimbursement from the Fund. Employer had not filed a certificate of pre-existing impairment until after the 1986 accident. The judge ordered the Fund to reimburse employer for 50% of the benefits paid to worker, pursuant to the New Mexico Subsequent Injury Act provisions applicable to this case (the Act). *See* NMSA 1978, §§ 52–2–1 to –13 (Orig. Pamp. and Supp. 1986, to extent applicable).

## DISCUSSION

### 1. *Employer's Knowledge.*

The Fund contends the only evidence of employer's knowledge is that employer knew that worker: (1) was injured in 1977; (2) had surgery on his knee; and (3) returned to work after a nine-month recuperation period. Additionally, the Fund maintains there was no evidence that worker walked with a limp after returning to work or that he had difficulty performing his tasks. The Fund essentially argues that there were no facts to "tip off" employer to the fact that worker had not fully and completely recovered from his surgery. For all employer knew, the Fund reasons, worker's knee had returned to 100% of its pre-injury strength.

■ The Fund contends the evidence was insufficient to support the finding that employer knew of worker's preexisting impairment. This court will not reweigh the evidence, but will review only to determine whether substantial evidence on the whole record supports the decision. *See generally Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 767 P.2d 363 (Ct. App.1988). Since one purpose of the Act is to encourage employers to hire or retain workers they know are handicapped, the Fund contends such scanty evidence cannot provide the basis for a finding that employer knew of the existence of a preexisting impairment. *See Padilla v. Chavez*, 105 N.M. 349, 732 P.2d 876 (Ct.App.1987) (discussing purpose of the Act).

■ We agree that, in some instances, mere knowledge of an injury and subsequent medical treatment is not sufficient to allow an inference that an employer knew of any permanent impairment suffered by worker. *Carter v. Kansas Gas & Elec. Co.*, 5 Kan.App.2d 602, 621 P.2d 448 (1980) (mere fact that worker had suffered a neck injury at work and company physician had examined him did not establish employer's knowledge of permanent impairment), *overruled on other grounds, Denton v. Sunflower Elec. Co-op., Inc.*, 242 Kan. 430, 748 P.2d 420 (1988); *see also Hinton v. S.S. Kresge Co.*, 3 Kan.App.2d 29, 592 P.2d 471 (1978) (employer's knowledge that worker received work-related back injury and that she was off work for four weeks did not establish that employer knew of permanent impairment). Many types of injuries heal without leaving a permanent impairment. In other cases, however, the injury is of such a serious nature, or is of such a particular type, that an inference of knowledge of permanent impairment is well founded. *See Connors v. Haywood Floor Co.*, 14 A.D.2d 947, 221 N.Y.S.2d 150 (1961) (decided under New York's strict knowledge requirement; implying that some types of injuries can be such as to put employer on notice of permanency of impairment). We believe the facts of this appeal present us with such a situation.

■ Worker's prior injury was to a knee and resulted in the removal of cartilage. Based on the evidence in this appeal and inferences to be drawn from such evidence, this is the type of injury from which it is notoriously hard to recover. Worker was not able to return to work within a short time, but underwent an extensive recuperation period. Significantly, testimony was adduced concerning the medical profession's view of such injuries. Dr. Grace, referring to the widely accepted American Medical Association (AMA) guide to the evaluation of permanent impairment, testified that an operation such as that performed on worker's knee results in a 10% permanent impairment to the lower extremity, even without complications. Similarly, according to Dr. Grace's testimony, the standards of the American Academy of Orthopedic Surgeons show that removal of cartilage, with no subsequent complications, results in a 5% permanent impairment to the lower extremity.

■ Although employer did not have the benefit of this medical opinion at the time worker was rehired, it did have the knowledge of the nature of worker's injury and the long recovery period. An employer is not required to know the medical specifics of an impairment, as long as knowledge of the impairment is present. *Denton v. Sunflower Elec. Co-op.*, 12 Kan.App.2d 262, 740 P.2d 98 (1987) (knowledge of "low

back problems" lasting ten years is sufficient; it is unnecessary to know problems caused by degenerative disc disease). The testimony regarding the medical profession's view of the injury adds support to our conclusion that, under the facts of this appeal, the injury was such that knowledge of the impairment can be inferred.

■ The fact that worker was able to return to his former employment and perform with no difficulty for a long period of time does not militate against the result we reach. One obvious purpose of the Act is to encourage the rehiring and retention of workers who have suffered injuries resulting in permanent impairments. *Padilla v. Chavez.* It would make little sense to differentiate between workers initially hired despite an impairment and workers who, after being hired, suffered an impairment.

We believe the judge could reasonably find from the evidence that, when worker returned to his job, employer did not know whether he would be able to completely perform his duties or whether his knee would prove troublesome. Employer did know, however, of the surgery and recuperation period. Given this knowledge, it would have been natural for employer to be somewhat reluctant to reemploy worker. His duties involved operating heavy machinery, and he was required to climb on and off large bulldozers during the course of a usual workday. He also performed other jobs requiring significant amounts of heavy labor. Under this set of facts, it was entirely reasonable to expect that worker's knee injury would cause him difficulty performing his job. Despite this knowledge and the potential for later re-injury, employer allowed worker to return to his job, thereby serving the purposes of the Act.

Employer must have had actual knowledge of employee's disability before the subsequent injury. *Padilla v. Chavez.* Because employer knew of worker's disability at the time worker returned to work, neither worker's later ability to do his job well nor lack of symptoms of impairment affects our analysis of the issue.

Although we recognize few cases have addressed the issue, our holding is nonetheless consistent with prior New Mexico case law. Our supreme court has held that an employer who knew only that worker had "some sort of problem" with his eye had sufficient knowledge to allow the certificate to be filed after the subsequent injury. *Fierro v. Stanley's Hardware.* In so holding, *Fierro* reversed this court's decision, which had held this knowledge insufficient. *See Fierro v. Stanley's Hardware.* If general, and somewhat vague, knowledge of "some sort of problem" is sufficient knowledge, we have no difficulty in concluding that knowledge of knee surgery and a resulting nine-month recuperation period is likewise sufficient. This conclusion is reinforced by the medical testimony that the surgery, even if successful, usually results in some degree of impairment.

### 2. *Substantial Evidence Issues.*

■ The Fund challenges the judge's determination that worker's disability was materially and substantially greater as a result of the combination of impairments than it would have been as a result of the later accident alone. Such a determination is necessary to trigger the Act's provisions governing reimbursement. § 52–2–9. We consider the Fund's contention to be without merit, concluding that there was substantial evidence on the record as a whole supporting the judge's determination. Dr. Leonard testified that worker's impairment is greater because of preexisting changes in the knee caused by the first injury. He also testified that the second injury aggravated the first. Dr. Grace testified that the second injury was a substantial and material aggravation of the first injury. This testimony was ample support for the judge's decision. *See Cano v. Smith's Food King,* 109 N.M. 50, 781 P.2d 322 (Ct.App.1989) (testimony from medical expert that subsequent injury aggravated the preexisting condition would permit trier of fact to infer that worker's disability was substantially and materially greater than that which would have resulted from the subsequent injury alone).

The Fund apparently argues there was no evidence the second injury affected the same cartilage that had been injured in the first incident. It also appears to argue that there was insufficient evidence that the injury to the ligament in the second accident was worse because of the preexisting condition. Based on these premises, the Fund concludes that there is not sufficient evidence forming a basis of the "materially and substantially greater" determination required under the Act. We disagree. The Act does not require that the subsequent injury affect either the same part of a worker's body or the same impairment from which worker suffers as a result of the preexisting condition. It also does not require that the preexisting impairment cause a more serious injury to the body part injured in the later accident. Instead, the Act requires only that the *disability* (not impairment) suffered after the subsequent injury be greater than it would have been if worker had not already been impaired. *See Fierro v. Stanley's Hardware* (worker had preexisting condition in one eye; suffered injury to other eye; Fund held liable for portion of benefits, because worker was more disabled with two eyes impaired than he would have been if only the second eye had been impaired).

The Fund next contends the judge erred in finding worker totally disabled, since there was evidence worker could go back to his former job after the subsequent injury. Although there was some testimony to that effect, the following evidence otherwise supported the judge's decision: (1) the same doctor who stated worker could go back to work placed restrictions on worker's ability to crawl, climb, squat, and press on heavy clutches; (2) worker testified there was no light duty available with employer; (3) worker's duties before his subsequent injury included climbing onto large pieces of machinery, using clutches, and performing other strenuous activities; (4) employer's doctor submitted a letter to employer after worker's second injury, stating that worker is "a poor candidate and a risk for additional injury" should he return to employment with employer. We thus conclude there was sub-stantial evidence in the record to support a finding worker could not return to his former employment. *See Tallman v. ABF (Arkansas Best Freight).*

Although the Fund's argument focuses on worker's testimony that other jobs he performed for employer did not involve heavy labor, worker's specific descriptions of the activities he performed in those positions indicated that climbing, squatting, or other strenuous activity was involved in all of the positions. The judge was not required to accept worker's characterization of the labor as not heavy, in light of these descriptions of the actual work performed. Consequently, employer presented sufficient evidence to support a finding that worker could not return to the specific job he was performing at the time of his second injury, or to any other job with employer.

The Fund argues that, based on the definition of total disability under the interim act, NMSA 1978, Section 52–1–24 (Cum.Supp.1986), which is applicable to worker's 1986 injury, the finding of total disability was erroneous. According to the Fund, employer did not prove worker could not earn a comparable wage, after calculating worker's potential partial disability payments and the amount he could earn after graduating from college or by returning to some other position with employer. *See Barela v. Midcon of N.M., Inc.*, 109 N.M. 360, 785 P.2d 271 (Ct.App.1989) (discussing total disability standard under interim act).

As employer correctly points out, however, worker testified that, after graduation with a bachelor's degree, he could expect to earn $7.65 per hour, or $306 per week. Added to that amount would be 25% of worker's compensation rate of $298.63 per week, or $74.66, for a total of $380.66. This amount is just under 70% of the amount worker was earning at the time he was injured. Under these facts, we have no difficulty affirming the judge's determination that employer met its burden of proving worker was not capable of earning a comparable wage. *Cf. Kincaid v. WEK Drilling Co.*, 109 N.M. 480, 786 P.2d 1214

(Ct.App.1989) (affirming finding that worker could earn comparable wage where disability benefits, salary, and profit-sharing totaled an amount representing 85% of pre-injury wages, and worker also received clothing discount and had "bright prospects" in retail industry); *Carpenter v. Arkansas Best Corporation*, 112 N.M. 22, 810 P.2d 1242 (App.1990) (Apodaca, J., dissenting) (judge's determination that worker was able to earn a comparable wage affirmed as supported by substantial evidence on the whole record). A judge is allowed flexibility in making the comparable wage determination, *Kincaid v. WEK Drilling Co.*, and the Fund has provided no compelling reason to overturn the determination in this case.

▪ The record reflects there was testimony that, if worker obtained a master's degree, he could potentially earn a wage high enough to be considered comparable. The judge found this possibility too speculative to consider. Since there was no testimony that worker had applied for, or had been or would be accepted for a master's program, assuming he did apply, we cannot reverse the judge's finding. *Cf. Gilliland v. Hanging Tree, Inc.*, 92 N.M. 23, 582 P.2d 400 (Ct.App.1978) (speculative possibility that worker might at some time in future be paid for his work was not a "wage" as contemplated by the statute).

▪ Finally, the Fund contends that the judge erred in apportioning 50% liability to employer and 50% to the Fund. We review this apportionment only to determine whether it is supported by substantial evidence on the whole record. *See Tallman v. ABF (Arkansas Best Freight)*. Dr. Leonard testified that half of worker's impairment was due to the first injury and half to the second. Dr. Grace testified that 40% of worker's impairment was due to the first injury and 60% to the second. Although the percentage of impairment did not equal the disability, and the judge was not bound by this testimony in arriving at an apportionment figure, the testimony nonetheless establishes that the apportionment was within the range of testimony presented. *See Mares v. Valencia County*

*Sheriff's Dep't*, 106 N.M. 744, 749 P.2d 1123 (Ct.App.1988) (expert testimony is not binding in determining apportionment; it is sufficient if apportionment is within range of testimony).

▪ The Fund next argues that the apportionment should have been strictly based on Dr. Grace's testimony, since it was the only testimony founded on AMA guidelines in establishing impairment. We know of no requirement in the interim act that the AMA guidelines be applied to apportionment determinations. Nor would we be justified in doing so in this appeal, where the AMA impairment level was only partial, yet the disability level was total. The Fund has failed to persuade us that the disability should be divisible at the same ratio as the impairment. We thus hold that the 50% apportionment was supported by the evidence.

CONCLUSION

We hold that employer had actual knowledge of worker's preexisting impairment to permit recovery against the Fund. Additionally, we conclude that there was substantial evidence supporting the judge's determination that worker's disability was greater as a result of the combined impairments than as a result of the subsequent injury by itself. We also hold that there was substantial evidence to support the judge's determination that worker could not earn a comparable wage after the second injury and was consequently totally disabled. Finally, we determine that the 50% apportionment was also supported by substantial evidence. The judge's decision is therefore affirmed.

IT IS SO ORDERED.

ALARID, C.J., and BIVINS, J., concur.