866 P.2d 368

**Reducindo TRUJILLO, Claimant– Appellant,**

v.

**CITY OF ALBUQUERQUE, Respondent–Appellee.**

No. 14120.

Court of Appeals of New Mexico.

Sept. 7, 1993.

Writ of Certiorari Denied
Nov. 11, 1993.

642

David Duhigg, Duhigg, Cronin & Spring, P.A., Albuquerque, for claimant-appellant.

Paula G. Maynes, Montgomery & Andrews, P.A., Santa Fe, for respondent-appellee.

## OPINION

DONNELLY, Judge.

Claimant appeals from a compensation order awarding permanent partial disability and attorney's fees. Claimant contends that (1) the Workers' Compensation Judge (Judge) erred in failing to find that he was totally permanently disabled; (2) Respondent, City of Albuquerque (City), acted in bad faith in refusing to pay disability benefits prior to a judicial determination of disability; and (3) the Judge's decision resulted from bias or prejudice. We affirm in part and reverse in part.

### FACTS

Claimant suffered an injury to his left shoulder on September 2, 1988, while working as a groundskeeper and handyman for the City at the Rio Grande Zoo. At the time of the injury, Claimant was fifty-four years old and had previously been determined to be totally disabled under the federal Social Security Act as a result of a back injury that occurred prior to his employment with the City. Payment of Social Security benefits, however, had been discontinued before the date Claimant sustained his work-related injury involved this case. Prior to his September 2, 1988, injury, Claimant had also been found to be totally permanently incapacitated for the purposes of receiving benefits under the Public Employees Retirement Act.

Testimony at trial indicated that Claimant completed only the fourth grade, that he speaks Spanish as a first language, and that he has difficulty speaking and understanding English. Other evidence indicated that Claimant has been classified as falling within the borderline range of intelligence and has below-average literacy skills. Claimant's job duties at the time of the September 1988 accident included work as a laborer, changing light bulbs, installing doors, and working on lavatory sinks. Claimant had previously been employed as a custodian, laborer, steel cutter, railroad laborer, groundskeeper, handyman, and agricultural worker.

After Claimant's September 1988 injury, he was examined or treated by a number of doctors and therapists. Claimant underwent surgery on February 20, 1989, to repair a torn rotator cuff. His postoperative diagnosis revealed that he was also suffering from an impingement syndrome due to degenerative arthritis, and joint and bicipital tendinitis. He reached maximum medical improvement on May 21, 1991.

Respondent presented evidence indicating that Claimant had an impairment rating between 12% to 15%. Virtually all of the specialists who treated him agreed that he could not return to his former employment as a handyman at the zoo, and that he should be confined to light-duty or sedentary work with restrictions against any overhead lifting or lifting over twenty-five pounds. Dr. Barry M. Diskant conducted an independent evaluation of Claimant on behalf of the City. He concluded that Claimant had a 14% permanent partial impairment of his left upper extremity, that he had reached maximum medical improvement, and that additional therapy would not assist in alleviating his condition. He also concluded that Claimant could perform light work but could no longer carry out his former occupation of handyman.

On July 22, 1991, Claimant filed a claim for workers' compensation benefits. At the hearing, the City's vocational expert, Debra Brewster, testified that the restrictions placed on Claimant's work activities by his medical care providers resulted in a 28.6% disability rating. In contrast, Claimant's vocational expert, Barbara Jarvis, testified that because of Claimant's age and physical and mental limitations he is not "qualified for work." At the conclusion of the hearing, the Judge found that Claimant had been temporarily totally disabled from the date of the accident until the date of maximum medical

improvement, and thereafter he was 38% permanently partially disabled.

## I. *Extent of Disability*

Claimant argues that the Judge erred in failing to find that he was permanently totally disabled, and that the Judge's finding that he was only 38% permanently partially disabled is not supported by substantial evidence under a whole-record standard of review. In examining this claim, we apply the definitions of disability set out under the 1987 Workers' Compensation Act. *See* NMSA 1978, §§ 52–1–25, –26 (Repl. Pamp.1987); *see also* NMSA 1978, § 52–1–48 (Repl.Pamp.1987); *Strickland v. Coca–Cola Bottling Co.*, 107 N.M. 500, 502, 760 P.2d 793, 795 (Ct.App.) (claim for workers' compensation benefits is controlled by legislative provisions in force at time cause of action accrued), *cert. denied*, 107 N.M. 413, 759 P.2d 200 (1988).

 Absent misapplication of law or lack of substantial evidence, the determination of the degree of disability is a factual issue to be decided by the judge in a workers' compensation proceeding, and a reviewing court will not substitute its judgment for that of the trial judge. *Ideal Basic Indus., Inc. v. Evans*, 91 N.M. 460, 461, 575 P.2d 1345, 1346 (1978); *see also Barnett & Casbarian, Inc. v. Ortiz*, 114 N.M. 322, 329, 838 P.2d 476, 483 (Ct.App.), *cert. quashed* (August 20, 1992); *Schober v. Mountain Bell Tel.*, 96 N.M. 376, 382, 630 P.2d 1231, 1237 (Ct.App.), *cert. quashed* (July 13, 1981). In determining the degree of a worker's disability, the judge is not bound by expert testimony on this issue; instead, the judge may base his finding on lay testimony. *See Grudzina v. New Mexico Youth Diagnostic & Dev. Ctr.*, 104 N.M. 576, 582, 725 P.2d 255, 261 (Ct.App.), *cert. quashed*, 104 N.M. 460, 722 P.2d 1182 (1986); *cf. Lucero v. Los Alamos Constructors, Inc.*, 79 N.M. 789, 791, 450 P.2d 198, 200 (Ct.App.1969) (trial court's evaluation of worker's disability held to be within range of evidence shown in record); *see also Kennecott Copper Corp. v. Chavez*, 111 N.M. 366, 373, 805 P.2d 633, 640 (Ct.App. 1990) (same).

In order to establish his claim of total disability, Claimant was required to prove that his disability prevents him "from engaging, for remuneration or profit, in any occupation for which he is or becomes fitted by age, training or experience." Section 52–1–25(A). "Partial disability" is defined as a condition where a worker "is unable to some percentage extent to perform any work for which he is fitted by age, education and training." Section 52–1–26(B). Under either of the applicable definitions of total or partial disability, the capacity of a worker to perform work is the primary test for determining the extent of his disability. *See Quintana v. Trotz Constr. Co.*, 79 N.M. 109, 111, 440 P.2d 301, 303 (1968), *overruled on other grounds by American Tank & Steel Corp. v. Thompson*, 90 N.M. 513, 514, 565 P.2d 1030, 1031 (1977).

In *Barnett & Casbarian, Inc.*, 114 N.M. at 327–28, 838 P.2d at 481–82, this Court held that the percentage of disability under the "capacity to perform work" test

> is based on the reduction in the spectrum of work for which the injured worker is fitted. The reduction may be the result of the elimination of certain jobs that the worker can no longer perform (carpentry, heavy laborer, etc.) or a reduction in the worker's ability to perform certain tasks associated with the worker's current job (handling forms, etc.), which presumably reduces the worker's job opportunities. [Footnote omitted.]

 Claimant contends that his capacity to perform work has been reduced to such an extent that he is permanently totally disabled as defined under the 1987 Act and that the City failed to present competent evidence supporting the finding that he was only 38% permanently partially disabled. He argues that because he was previously found to be totally disabled for purposes of receiving Social Security benefits and Public Employees Retirement Act benefits, the determination of the Judge in the present case that he was only 38% partially disabled under the Workers' Compensation Act was arbitrary, capricious, and contrary to the weight of the evidence. We are not persuaded by this argument. Evidence of disability awards re-

ceived by a claimant under other statutory laws are generally inadmissible to establish the extent and degree of disability of the claimant in a workers' compensation action. *See Bingham v. Dyersburg Fabrics Co.*, 567 S.W.2d 169, 171 (Tenn.1978); *see also* 2B Arthur Larson, *The Law of Workmen's Compensation* § 79.71(b) (1993) ("Awards or records made in other proceedings, such as those involving social security claims, ... [or] disability pension claims ... ordinarily cannot be relied on to support or deny a workers' compensation claim.").

■ Claimant's other evidence concerning the extent of his disability rests primarily on the testimony of Barbara Jarvis, a vocational evaluator. Jarvis testified that, at the time of trial, Claimant was 57 years of age, his age constituted "a highly negative factor"; that Claimant's lack of education and functional illiteracy was a "very negative, very limiting factor"; that Claimant's prior work experience has been limited to unskilled, manual occupations; and that Claimant's education and experience, combined with his light-duty physical restrictions, limited his employment options. She also testified that "[w]hen you put all of that together you've got someone who basically is not going to be qualified for work," and that he was 100% disabled under the standards adopted by the 1987 Workers' Compensation Act.

■ The foregoing testimony, together with evidence of Claimant's work-related injury, was sufficient to establish a prima facie claim of total permanent disability. *Sanchez v. Molycorp, Inc.*, 113 N.M. 375, 378, 826 P.2d 971, 974 (Ct.App.1992) (once the claimant has presented evidence that he is disabled from a work-related injury, burden of production shifts to the employer to present evidence that would support a finding of the claimant's employability in a job for which he or she is fitted by age, education, and experience). Thus, we examine the record to ascertain whether the finding that Claimant is 38% permanently partially disabled is supported by substantial evidence under a whole-record standard of review. *See Evans v. Valley Diesel*, 111 N.M. 556, 559, 807 P.2d 740, 743 (1991); *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 129–30, 767 P.2d

363, 368–69 (Ct.App.), *cert. denied*, 109 N.M. 33, 781 P.2d 305 (1988). Under this standard, we view the evidence presented at trial in the light most favorable to the Judge's findings entered below and determine whether the Judge, in rendering his decision, correctly applied the law to the facts. *Evans*, 111 N.M. at 557, 807 P.2d at 741. A finding will be set aside when the reviewing court cannot conscientiously say that the evidence supporting the finding is substantial, viewed in the light that the whole record furnishes. *Tallman*, 108 N.M. at 129, 767 P.2d at 368.

■ In support of the Judge's finding that Claimant was only 38% permanently partially disabled, the City argues that the finding was higher than that opined by its disability expert, and thus was within the range of evidence presented at trial. Brewster testified that in her opinion Claimant had a permanent partial disability rating of 28.6%. In explaining how she arrived at this opinion, she stated that she considered two factors, "access to jobs and wage-earning capacity." She also indicated that she arrived at her determination of Claimant's wage-earning capacity by calculating his pre-injury average earnings for jobs for which Claimant was fitted and subtracting the post-injury average of wages for the remaining jobs.

Based upon her use of the factors outlined above, Brewster concluded that, as a result of his work-related injury, Claimant was precluded from performing approximately 51% of the jobs available, but that he sustained only a 6.2% loss of wage-earning capacity. She also stated that she applied a formula utilized in another jurisdiction and arrived at her opinion that Claimant was 28.6% permanently partially disabled by adding the figures of 51.0% and 6.2% together and dividing by two. Claimant challenges the validity of Brewster's analysis, contending that the testimony was inadmissible under SCRA 1986, 11–702, and that it should have been stricken. We agree with Claimant that the formula employed by Brewster to determine the percentage of Claimant's disability was incorrect as a matter of law and was at variance with the provisions of Sections 52–1–25 and –26 in effect at the time of Claimant's injury. The formula utilized by her combines both the

"capacity to perform work test" contemplated by the 1987 Act and a "wage-earning-ability" test. *See Feese v. U.S. West Serv. Link, Inc.,* 113 N.M. 92, 94, 823 P.2d 334, 336 (Ct.App.) (under capacity to perform work test, worker may be entitled to disability benefits even if she is working for some wage), *cert. withdrawn,* 113 N.M. 23, 821 P.2d 1060 (1991); *see also Barela v. Midcon of N.M., Inc.,* 109 N.M. 360, 362, 785 P.2d 271, 273 (Ct.App.), *cert. denied,* 109 N.M. 262, 784 P.2d 1005 (1989).

Claimant additionally argues that Brewster's calculation that he suffered only 51% loss of access to jobs in the labor market was erroneous because in formulating her opinion she did not consider the factor of Claimant's age. When questioned by Claimant's attorney at her deposition, she stated that prior to his 1988 injury the main barriers facing Claimant in seeking employment were the fact of his 100% disability under Social Security, his lack of education, and that "at this time, his age would be a consideration as a barrier to employment, although no one is supposed to discriminate." When examined concerning whether her definition of disability included Claimant's age, education, and experience as factors, she responded by stating: *"Yes, it takes in account education and experience. It does not factor in age."* (Emphasis added.) Brewster also testified in her deposition that "[t]he factors that I use in determining disabilities do not consider the age as a factor, but it does consider age, education, and training by use of the V.D.A.R.E. Process in using this analysis."

Claimant correctly notes that the failure to take into account his age is contrary to the definitions of either total or partial disability under Sections 52–1–25 and –26 of the 1987 Act. *See Schober,* 96 N.M. at 381, 630 P.2d at 1236 (worker may be shown to be disabled if he cannot perform some or all of the work for which he is fitted by age, education, training, capacity, and experience). Specific enumeration of age as a factor in determining the extent of an individual's disability constitutes a legislative directive that the age of an injured worker should be considered in determining whether Claimant can realis-

tically perform and obtain gainful employment in the labor market.

■ Brewster's explanation of the factors used by her in formulating her opinion concerning Claimant's disability failed to comport with the statutory definitions of total or partial disability. *See Barnett & Casbarian, Inc.,* 114 N.M. at 329, 838 P.2d at 483 (directing remand for redetermination of extent of worker's disability because of workers' compensation judge's application of incorrect legal standard). While an expert may properly utilize a computer program in performing calculations or to obtain information used in formulating his or her opinion, the witness must satisfactorily explain the means employed in reaching such opinion. *Cf. Walker v. L.G. Everist, Inc.,* 102 N.M. 783, 790, 701 P.2d 382, 389 (Ct.App.) (witness must satisfactorily explain steps utilized in arriving at opinion), *cert. denied,* 105 N.M. 94, 728 P.2d 845 (1985); *see also Commercial Union Ins. Co. v. Boston Edison Co.,* 412 Mass. 545, 591 N.E.2d 165, 168 (1992).

■ The City also argues that other evidence supports the Judge's finding that Claimant was 38% disabled, and points to evidence indicating that Claimant was highly motivated to obtain employment, and the testimony of several health-care providers that Claimant could be released to perform light-duty or sedentary work. The fact that Claimant was highly motivated to seek employment, however, without other competent evidence bearing upon Claimant's age, education, and experience, is insufficient to support a finding that he was only 38% permanently partially disabled. *See Maes v. John C. Cornell, Inc.,* 86 N.M. 393, 396, 524 P.2d 1009, 1012 (Ct.App.1974) (worker should not be penalized for efforts to obtain reemployment); *see also DiMatteo v. County of Dona Ana,* 109 N.M. 374, 381, 785 P.2d 285, 292 (Ct.App.1989) (evidence of impairment, restrictions related to injury, does not necessarily equate with disability).

■ Although we agree with Claimant that the formula used by Brewster to calculate his disability was erroneous and could not properly be relied upon by the Judge to support a finding that Claimant was only

28.6% permanently partially disabled, other testimony presented by Brewster, including the use of a computer program, considered Claimant's age, education, and experience, in determining that Claimant had suffered a 51% loss of access to jobs. This evidence, if accepted by the Judge, was sufficient to establish a lower disability. The range of evidence bearing on the extent of Claimant's disability extended from a minimum of 51% permanent partial disability to 100% permanent total disability. While a judge is not bound to accept the testimony of the experts and can properly determine the extent of a claimant's disability based on other competent evidence, *Romo v. Raton Coca Cola Co.*, 96 N.M. 765, 767, 635 P.2d 320, 322 (Ct.App. 1981), here, there was no other competent evidence indicating that the range of Claimant's disability was less than 51%. *See Akel v. New Mexico Human Servs. Dep't*, 106 N.M. 741, 742–43, 749 P.2d 1120, 1121–23 (Ct.App.1987) (evidence that claimant had previously worked despite disability and that claimant could work at 55% of a normal person's capacity in sheltered environment did not support conclusion that claimant was not disabled at the time she applied for general assistance benefits), *cert. denied*, 107 N.M. 74, 752 P.2d 789 (1988).

■ For the reasons discussed above, we think it is clear that the Judge erred in adopting his finding that Claimant was only 38% permanently partially disabled, and the other evidence relied upon by the City was insufficient to support the finding on this issue. Although the degree of disability is a question of fact, *Trujillo v. Tanuz*, 85 N.M. 35, 39, 508 P.2d 1332, 1336 (Ct.App.1973), the Judge's finding concerning the extent of a worker's disability must be supported by competent evidence and fall within the range of competent evidence. *Ideal Basic Indus., Inc.*, 91 N.M. at 461, 575 P.2d at 1346; *Lucero*, 79 N.M. at 791, 450 P.2d at 200. As a reviewing Court, we do not assume the role of a fact finder. Thus, the cause must be remanded for redetermination of the percentage of Claimant's disability. *See Barnett & Casbarian, Inc.*, 114 N.M. at 329, 838 P.2d at 483.

## II. *Claim of Bias and Bad Faith*

We have examined Claimant's remaining claims which assert that the Judge was biased and that the City acted in bad faith in refusing to pay compensation benefits to Claimant prior to the administrative adjudication of disability. We find these contentions without merit. Claimant has failed to demonstrate that the claim of judicial bias was preserved at trial as required by SCRA 1986, 12–213(A)(3) (Repl.1992) and the record fails to contain evidence supporting such contention. *See Southern Union Gas Co. v. Taylor*, 82 N.M. 670, 672, 486 P.2d 606, 608 (1971) (claim of judicial bias not disclosed in the record falls outside scope of appellate review).

■ Claimant also argues that the City has followed a policy of refusing to pay workers' compensation benefits over and above a worker's impairment rating despite its awareness concerning the distinctions between the definitions of impairment and disability under the 1987 Workers' Compensation Act. Our review of the record indicates that the Judge's determination that the City did not act in bad faith in the present case is supported by substantial evidence. The fact that there may have been evidence which may have supported a different finding is not a basis for reversal where the record also contains evidence which reasonably supports the challenged finding. *Toltec Int'l, Inc. v. Village of Ruidoso*, 95 N.M. 82, 84, 619 P.2d 186, 188 (1980).

In order to prove bad faith under NMSA 1978, Section 52–1–54(G) (Repl.Pamp.1987) of the 1987 Act, a claimant is required to show that the conduct of an employer "in the handling of a claim ... amounts to fraud, malice, oppression or willful, wanton or reckless disregard of the rights of the worker." The City offered evidence that it reduced Claimant's benefits in part on Dr. Diskant's opinion that Claimant had reached maximum medical improvement and, subject to certain restrictions, was able to perform light-duty work. *Cf. Toynbee v. Mimbres Memorial Nursing Home*, 114 N.M. 23, 31–32, 833 P.2d 1204, 1212–13 (Ct.App.1992) (employer's reliance on opinion of doctor indicating that the worker had reached maximum medical im-

provement and where employer had reasonable basis to challenge whether knee injury was causally related to work-related accident, constituted rational basis for workers' compensation judge to reject claim of bad faith); *see also Mascarenas v. Jaramillo,* 111 N.M. 410, 412, 806 P.2d 59, 61 (1991) (reviewing court will not reweigh trial court's determination of facts; on appeal, court's duty is to determine whether facts are sufficient to support trial court's factual findings).

## CONCLUSION

We affirm the ruling denying Claimant's claims of bias and bad faith; we reverse that portion of the compensation order finding that Claimant is 38% permanently partially disabled, and remand the cause for redetermination of Claimant's disability in accordance with the matters discussed herein. On remand the Judge shall also redetermine the appropriate amount of attorney's fees to be awarded in light of Claimant's success on appeal.

IT IS SO ORDERED.

APODACA, J., concurs.

HARTZ, Judge, concurring in part and dissenting in part.

HARTZ, Judge (concurring in part, dissenting in part).

I agree with the majority that we must affirm the Workers' Compensation Judge (Judge) on the issues of judicial bias and employer bad faith. I also agree that we should remand on the issue of the percentage extent of Claimant's permanent partial disability. My disagreement is with the ruling that the Judge must find a percentage of disability of at least 51%. I would simply remand for further findings and/or conclusions. Additional findings may justify the original award. If not, new conclusions of law are in order. My chief concern about the majority opinion, however, is not with the result. I am much more concerned about the apparent ad hoc nature of the opinion. The majority opinion does not explain why the record will not support a finding of a percentage of disability below 51%. Without a more complete explanation of the legal standard for measuring the percentage extent of disability, a ruling that the evidence did not measure up appears to be no more than a visceral reaction.

Before today, no reported appellate decision in this state had held that a party was entitled to a finding of partial disability either greater or less than the finding made at trial. When the record would support findings that the worker was permanently disabled but not totally disabled, the appellate courts have deferred to the fact finder regarding what percentage of disability to award. Indeed, the appellate courts have given the trial bench very little guidance on how to go about measuring the percentage of disability. The applicable statute states that partial disability is a condition whereby a worker "is unable to some percentage extent to perform any work for which he is fitted by age, education and training." NMSA 1978, § 52-1-26(B) (Repl.Pamp.1987). Appellate decisions have explicated the language only to the extent of saying that capacity to perform work is not related to income-earning capacity but rather "is based on the reduction in the spectrum of work for which the injured worker is fitted." *Barnett & Casbarian, Inc. v. Ortiz,* 114 N.M. 322, 327, 838 P.2d 476, 481 (Ct.App.), *cert. quashed* (August 20, 1992).

The quoted language could be interpreted to mean that one's percentage extent of disability is measured by the percentage decrease in the tasks one can perform. This measure would seem appropriate when a worker is able to retain the job held at the time of injury but can no longer perform all the tasks previously associated with the job (as, for example, when a secretary can no longer lift heavy boxes). The Judge may have used this measure in this case.

Yet when a worker can no longer hold the job at which the worker was employed at the time of injury, which is the situation here, the reduction-in-tasks measure is inappropriate. As noted in *Barnett & Casbarian,* 114 N.M. at 316, 838 P.2d at 480:

[W]hether an individual's skills constitute a capacity to perform work depends upon what work is being performed by members of society. A physically disabled mathe-

matician may have no capacity to perform work in a primitive society but be a prized employee in the post-industrial age. Thus, in measuring one's capacity to perform work it is necessary to look to the job market.

The capacity to perform tasks is economically meaningful only insofar as that capacity enables the worker to hold a job that exists in the job market. If one follows *Barnett & Casbarian* in construing "work" in the phrase "capacity to perform work" as meaning "jobs that exist in the relevant economy," then the decrease in the capacity to perform work should be measured by the decrease in the worker's ability to meet the requirements of jobs in the job market. That decrease would ordinarily be simply the percentage reduction in the number of jobs for which the worker is fitted. On occasion adjustments may be appropriate. For example, if a worker has special qualities (such as leadership skills or proficiency in languages) that make the worker especially attractive for the jobs the worker can still perform but that are not particularly relevant to the jobs that the worker can no longer perform, perhaps the percentage disability should be adjusted downward. The appropriateness of such adjustments can be determined on a case-by-case basis. In general, I would expect there to be no grounds for adjustment.

This is not to say that a worker's percentage disability will usually be clear-cut. On the contrary, precision in evaluating the percentage of disability is impossible. It is unlikely that available data can state exactly the number of positions that employers in an area have for a particular job. Even if the data were available for one point in time, there would still be room for discretion in determining (1) the relevant geographic area for available jobs and (2) whether adjustments should be made to the data for a specific date because of, for example, unusual economic circumstances that differ from long-term trends and are likely to change in the near future. Of course, there will also often be questions concerning the capabilities of the individual worker.

What is the role of an appellate court in this process? In other words, what is the appropriate standard of review to be applied by the appellate court? Because this depends on the allocation of the burden of persuasion at trial, I will first address that issue.

It is a long-standing rule that the worker has "the burden of persuading the [trier of fact] as to all elements of her compensation claim." *Aguilar v. Penasco Indep. Sch. Dist. No. 6,* 100 N.M. 625, 628, 674 P.2d 515, 518 (1984) (Supreme Court adoption of opinion by Court of Appeals); *see Baca v. Bueno Foods,* 108 N.M. 98, 102, 766 P.2d 1332, 1336 (Ct.App.1988); *Dibble v. Garcia,* 98 N.M. 21, 23, 644 P.2d 535, 537 (Ct.App.), *cert. denied,* 98 N.M. 50, 644 P.2d 1039 (1982). To be sure, once the worker establishes incapacity to perform the tasks comprising the job held at the time of the injury and produces evidence with respect to the worker's age, education, training, and general physical and mental capacity, the employer then has the burden to produce evidence that the worker is fitted for work other than the job at the time of the injury. *See Sanchez v. Molycorp, Inc.,* 113 N.M. 375, 378, 826 P.2d 971, 974 (Ct.App.1992); *Brown v. Safeway Stores,* 82 N.M. 424, 427, 483 P.2d 305, 308 (Ct.App. 1970). If the employer fails to produce such evidence, the worker must be awarded benefits for total disability. But once the employer satisfies this burden of production, there remains the factual issue of the percentage extent of the worker's permanent disability, and the burden of persuasion on that issue is the worker's. *Cf.* SCRA 1986, 11–301 (presumption imposes burden of going forward with rebutting evidence but does not shift burden of persuasion). In other words, once the employer provides evidence that the worker is capable of performing jobs, the worker has the burden of establishing the percentage of disability that the worker seeks. A determination that the worker is, say, 40% permanently partially disabled is proper if the fact finder is unpersuaded that the partial disability exceeds 40%.

The proper standard of appellate review follows from the above. Because the worker bears the burden of persuasion on the percentage extent of disability, the appellate court must affirm on appeal by the worker if

it was rational for the fact-finder to rule against the worker. *See Whittenberg v. Graves Oil & Butane Co.*, 113 N.M. 450, 453 n. 2, 827 P.2d 838, 841 n. 2 (Ct.App.1991) ("[A]ppellate court will sustain finding against party with burden of persuasion if it was rational for the fact-finder to disbelieve the evidence contrary to the finding."), *cert. denied*, 113 N.M. 352, 826 P.2d 573 (1992); *Sosa v. Empire Roofing Co.*, 110 N.M. 614, 616, 798 P.2d 215, 217 (Ct.App.1990) (same). In other words, the determination of partial disability by the fact finder must be sustained on an appeal by the worker if it was rational for the fact finder not to be persuaded that the worker's partial disability exceeded the percentage expressed in the award.

Thus, in this case the question on appeal is whether it was rational for the Judge to be unpersuaded that Claimant's partial disability exceeded 38%. Perhaps it was. On this record, however, I cannot sustain the determination of partial disability without further findings by the Judge justifying his ruling. As I indicated above, the base figure for determining Claimant's partial disability is the percentage reduction as a result of Claimant's injury in the number of jobs for which he is fitted in the relevant geographic area. The City's central evidence on this point was the testimony of its expert, Debra Brewster. She stated that the number of jobs in the Albuquerque job market for which Claimant was fitted had dropped by 51% as a result of his injury. There may be rational grounds for not fully crediting Brewster's figure and then arriving at a lower percentage of disability. But none is apparent from the record. What was it that failed to persuade the Judge that Claimant was more than 38% disabled? I do not fault the Judge in this case for not making explicit findings on the issue. Given the past failure of the appellate courts in this state to provide significant review of determinations regarding the percentage of partial disability, the Judge could naturally decide that it was necessary to provide only the specific partial disability figure. Nevertheless, when the record strongly suggests that a conclusion is not justified by the evidence, it is appropriate to remand for additional findings or conclusions. *See Barnett & Casbarian, Inc.; Foutz*

*v. Foutz*, 110 N.M. 642, 798 P.2d 592 (Ct.App. 1990).

I should add two final comments regarding the award of Social Security disability and the age factor. First, I agree with the majority that evidence of the award of Social Security disability benefits to Claimant after his injury is not relevant to the award of workers' compensation benefits, even if it were otherwise admissible. Testimony at the hearing in this case made clear that the Social Security award was based on a table used by the Social Security Administration and was independent of whether Claimant in fact could find suitable employment.

Second, although age is listed in the Workers' Compensation Act as a factor to be considered in evaluating disability, NMSA 1978, §§ 52-1-25, –26 (Repl.Pamp.1987), it would not be unreasonable for the Judge to find that specific consideration of Claimant's age would not materially affect Brewster's percentage calculation. To the extent that age affects suitability for employment because of physical deterioration with time, Brewster's analysis took into account an evaluation of Claimant's physical capacity. To the extent that age affects one's capacity to learn new skills (or affects the cost-benefit ratio of training a person with a limited future worklife), this consideration should be unimportant when the worker's job possibilities are limited to unskilled work, as was Claimant's situation. To the extent that employers may prefer younger workers (i.e., will discriminate against older workers), it is noteworthy that the jobs specifically described by Brewster as being suitable for Claimant were jobs with employers who would be prohibited by federal law from discriminating against workers on the basis of age. *See* 29 U.S.C. §§ 623, 630, 631.