This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**IN THE MATTER OF THE PROTEST OF**
**SOUTHWEST MOBILE SERVICE AND**
**RICHARD CAMERON,**

**SOUTHWEST MOBILE SERVICE and**
**RICHARD CAMERON,**

Protestants-Appellants,

v. NO. 34,551

**NEW MEXICO TAXATION AND REVENUE**
**DEPARTMENT,**

Respondent-Appellee.

**APPEAL FROM THE N.M. TAXATION AND REVENUE DEPARTMENT**
**Dee Dee Hoxie, Hearing Officer**

Denise Thomas Law P.C.
Denise M. Thomas
Santa Fe, NM

Sanders Law P.C.
Tracy T. Sanders
Santa Fe, NM

for Appellants

Hector H. Balderas, Attorney General
Elena Romero Morgan, Special Assistant Attorney General

Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

{1}     Southwest Mobile Service and its owner, Richard Cameron (Cameron), protested the New Mexico Taxation and Revenue Department's assessment of gross receipts taxes based on services that Southwest Mobile sold to an out-of-state buyer. The hearing officer denied their protest of these taxes, and Southwest Mobile and Cameron appeal. We reverse.

**BACKGROUND**

{2}     Because an understanding of the relevant tax certificates is critical to providing context for the facts here, we begin with an overview of those certificates. "For the privilege of engaging in business, an excise tax equal to five and one-eighth percent of gross receipts is imposed on any person engaging in business in New Mexico." NMSA 1978, § 7-9-4(A) (2010). This tax is known as the "gross receipts tax." Section 7-9-4(B). However, sellers in New Mexico may deduct receipts from the sale of services to an out-of-state buyer from their taxes if the buyer provides to the seller a certificate stating that the transaction is nontaxable. NMSA 1978, § 7-9-57(A) (2000). Two types of such certificates are at issue here: the "nontaxable transaction

2

certificate" or NTTC, and the "multijurisdictional uniform sales and use tax certificate," or MTC. *See* NMSA 1978, § 7-9-43 (2011); NMSA 1978, § 7-5-1 (1967) (enacting the Multistate Tax Compact). There are ten types of NTTCs, including type 2 NTTCs (for purchases of tangible personal property) and Type 5 NTTCs (for purchases of services). *See* 3.2.201.8(C) NMAC (stating that different types of NTTCs are issued). To obtain an NTTC, a buyer must register with the Department and apply for an NTTC. 3.2.201.9 NMAC. The Department may decline to issue NTTCs to a buyer if the buyer does not comply with the Department's requirements. *See* NMSA 1978, § 7-9-44 (2001). Section 7-9-43(A) includes a good faith provision permitting a seller to rely on the buyer's NTTC in certain circumstances. This provision is discussed further below.

{3} MTCs are promulgated by the Multistate Tax Commission. *See* Multistate Tax Commission, http://www.mtc.gov/Resources/Uniform-Sales-Use-Tax-Exemption-Certificate; § 7-5-1. "In order to coordinate and facilitate the collection of taxes from . . . national corporations, New Mexico executed . . . [the] Multistate Tax Compact (the Compact) with several other states, which established the Multistate Tax Commission." *Siemens Energy & Automation, Inc. v. N.M. Taxation & Revenue Dep't*, 1994-NMCA-173, ¶ 1, 119 N.M. 316, 889 P.2d 1238. "The Multistate Tax Commission, in cooperation with various states and taxpayers, . . . created [the MTC, which] is filled out by buyers claiming sales tax exemptions and is maintained on file

by sellers." *Id.* ¶ 7 (internal quotation marks and citation omitted). "[An] MTC . . . , like a[n] . . . NTTC[], is delivered by the purchaser to the seller as the documentation required to support the exclusion of the sale from local sales or gross receipts tax." *Id.* Each state is entitled to specify the conditions under which it will accept an MTC. Multistate Tax Commission, FAQ Uniform Sales and Use Tax Certificate, http://www.mtc.gov/Resources/Uniform-Sales-Use-Tax-Exemption-Certificate/FAQ-Uniform-Sales-and-Use-Tax-Certificate#B14 ("The applicable state will determine whether a certificate is acceptable for the purpose of demonstrating that sales tax was properly exempted."). New Mexico will accept an MTC only from buyers not required to be registered with the Department and only for purchase of tangible personal property. Section 7-9-43(A); 3.2.201.13 NMAC. Like the statute governing NTTCs, the Compact includes a good faith provision permitting the seller to deduct its sales based on the buyer's MTC. This provision is discussed further below.

{4}     With this background in mind, we turn to the facts leading to this appeal. They are largely undisputed. Southwest Mobile is owned and operated as a sole proprietorship by Cameron. It provides vehicle maintenance and cleaning services for United Parcel Service (UPS) vehicles pursuant to contracts with UPS Oasis Supply Corporation (Oasis), the procurement contractor for UPS, and has done so since 2001. Southwest Mobile provided Oasis these services in New Mexico, Utah, Wyoming, and

Idaho. The present appeal pertains to taxes related to services provided in New Mexico from 2002 through 2008.

{5} Near the beginning of Southwest Mobile's relationship with Oasis, Oasis provided a letter stating that "[Oasis] is classified in your state as a 'Reseller' of most products and services. Therefore, *no sales tax* is to be charged on these transactions." Oasis also provided to Southwest Mobile an MTC. The MTC includes a statement that "[t]he issuer and the recipient have the responsibility of determining the proper use of this certificate under applicable laws in each state, as these may change from time to time." By signing the MTC, Oasis certified that "if any property or service so purchased tax free is used or consumed by the firm as to make it subject to a Sales or Use Tax we will pay the tax due directly to the proper taxing authority when state law so provides or inform the seller for added tax billing." Southwest Mobile now acknowledges that the MTC was not the correct certificate because Southwest Mobile was selling services to Oasis, not tangible goods, and Oasis was registered in New Mexico. Instead, Oasis should have issued a Type 5 NTTC to Southwest Mobile. Over the course of their relationship, Oasis issued multiple letters and MTCs to Southwest Mobile stating that it would pay any taxes due on its purchases. Consistent with its certification on the MTCs, Oasis paid the gross receipts taxes due on the services purchased from Southwest Mobile.

{6}     In 2008 the Department initiated an audit for the period from 2002 to 2008. At a meeting between Southwest Mobile staff and the Department's auditor, the auditor gave Cameron a "[sixty]-day letter," which advised him that "Section 7-9-43 . . . requires that . . . New Mexico NTTCs (or other required documentation) be in your possession within sixty (60) days from the date this notice is given to your firm or organization." The letter warned that "[i]f the above listed required documentation is not . . . delivered or mailed to the auditor within sixty (60) days from the date of this notice, deductions previously claimed relating to that documentation will be disallowed." Cameron entrusted the response to the audit to Southwest Mobile's accountant and the accountant repeatedly assured Cameron that "the necessary documents were being obtained." However, the accountant did not obtain an NTTC within the deadline and the Department assessed taxes, penalties, and interest of $504,931.82[1] against Southwest Mobile. The hearing officer found that Cameron did not realize the right documents were not filed until after the assessment was made and the protest filed. After the assessment, and as soon as he learned that an NTTC was required, Cameron requested one from Oasis, which provided a proper NTTC to Cameron on February 2, 2009. The auditor rejected the NTTC on the ground that it was not dated within or prior to the sixty-day deadline stated in the sixty-day letter.

[1]The penalties ($58,851.70) were later abated.

6

Oasis then provided a backdated NTTC on April 2, 2009, but this too was rejected because "its execution to [Southwest Mobile] was after the [sixty]-day deadline."

{7} Southwest Mobile protested the tax assessment. A two-day hearing was held. At the hearing, the Department "conceded that [Southwest Mobile] would have been able to deduct the sales to Oasis from [its] gross receipts if [it] had obtained the NTTC within the [sixty]-day deadline." It also conceded that "the MTC would have allowed [Southwest Mobile] to deduct [its] sales to Oasis from [its] gross receipts if [it] were selling tangible property rather than services." Southwest Mobile argued that it had timely accepted the MTCs in good faith and that the MTCs should serve as evidence that it was entitled to the deduction. The hearing officer found that Southwest Mobile had accepted the MTCs in good faith. However, she ultimately concluded that the good faith provision in the Compact did not apply and that Southwest Mobile had not overcome the presumption of correctness accorded the Department's assessment of taxes, and denied the protest of gross receipts taxes. This appeal followed.

**DISCUSSION**

{8} Southwest Mobile makes three arguments which we consolidate into two. First, it maintains that it is entitled to a deduction because it accepted the MTCs in good faith and because an MTC is, or should be, treated like an NTTC. Second, it contends that "[t]his Court should equitably estop the Department from assessing the gross receipts tax in this case as justice demands it." Because we conclude that the good

7

faith provision applies here, we do not reach Southwest Mobile's equitable estoppel argument.

{9} Beginning with the presumption that the Department's tax assessment was correct, we may reverse the hearing officer's decision only if it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." *ITT Educ. Servs. Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 4, 125 N.M. 244, 959 P.2d 969 (internal quotation marks and citation omitted); NMSA 1978, § 7-1-17(C) (2007) ("Any assessment of taxes or demand for payment made by the department is presumed to be correct."). "Under [the whole record review] standard, we view the evidence presented at trial in the light most favorable to the . . . findings entered below and determine whether the [hearing officer], in rendering [her] decision, correctly applied the law to the facts." *Trujillo v. City of Albuquerque*, 1993-NMCA-114, ¶ 13, 116 N.M. 640, 866 P.2d 368.

{10} Section 7-9-43(A) provides:

> When the seller or lessor accepts a[n NTTC] within the required time and in good faith that the buyer or lessee will employ the property or service transferred in a nontaxable manner, the properly executed nontaxable transaction certificate shall be conclusive evidence, and the only material evidence, that the proceeds from the transaction are deductible from the seller's or lessor's gross receipts.

8

{11}    In *Leaco Rural Tel. Coop., Inc. v. Bureau of Revenue*, this Court stated that an NTTC becomes conclusive evidence of deductibility when a properly completed and signed NTTC is timely accepted in good faith. 1974-NMCA-076, ¶ 15, 86 N.M. 629, 526 P.2d 426. In that case, Leaco's deductions were disallowed, not because of a failure of any of these three conditions, but because the NTTCs were "improperly issued." *Id.* ¶ 16 (internal quotation marks omitted). The Court held that "deduction[s] based on NTTCs held in compliance with [what is now Section 7-9-43(A) are] not conditioned upon proper issuance of the NTTC." *Id.* ¶ 20. It went on, "Whether the NTTC has been properly issued is a matter between the [Department] and the one who issues the NTTC." *Id.* Thus, although Leaco's sales were not actually deductible "in the first instance," and hence the buyer improperly issued NTTCs to Leaco, once Leaco accepted the NTTCs in good faith, it was protected from tax liability under the good faith provision in Section 7-9-43(A). *Id.* ¶ 22; *see Cont'l Inn of Albuquerque, Inc. v. N.M. Taxation & Revenue Dep't*, 1992-NMCA-030, ¶ 12, 113 N.M. 588, 829 P.2d 946 (applying *Leaco*).

{12}    The Compact also includes a good faith provision titled "Exemption Certificates, Vendors May Rely." Section 7-5-1, art. V, § 2 reads:

> Whenever a vendor receives and accepts in good faith from a purchaser a resale or other exemption certificate or other written evidence of exemption authorized by the appropriate state or subdivision taxing authority, the vendor shall be relieved of liability for a sales or use tax with respect to the transaction.

9

{13} Like Section 7-9-43(A), "[t]his provision has been interpreted to offer a seller who accepts such a certificate in good faith a safe harbor that provides absolute relief from sales tax liability irrespective of whether the underlying transaction qualified for an exemption." *Siemens*, 1994-NMCA-173, ¶ 15. The seller's good faith "may rest solely upon the representations made by the buyer in the exemption certificate, as such reliance fulfills the function of exemption certificates." *Id.* (internal quotation marks and citation omitted). The *Siemens* Court noted that these qualities of the MTC good faith provision are "virtually identical to this Court's treatment of NTTCs, which serve the same purpose in intrastate transactions that are served by MTCs for interstate [transactions]." *Id.* ¶ 16 (citing *Cont'l Inn,* 1992-NMCA-030, ¶ 12, which addressed good faith in the acceptance of NTTCs).

{14} Our review of the statutes and cases construing the good faith provisions leads us to conclude that Southwest Mobile's acceptance of the MTCs falls within the good faith provision in Article V, Section 2 of the Compact. *See* Section 7-5-1. We are not persuaded by the Department's arguments to the contrary.

{15} First, the Department argues that "[s]ince the MTC did not apply to Southwest [Mobile's] transaction at all, it is not eligible for the good faith provision in [the Compact]." The hearing officer appears to have based its decision on similar reasoning, *i.e.*, that because the Department had not authorized the use of MTCs for taxable services, the good faith provision did not apply. *See* § 7-5-1, art. V, § 2

10

("Whenever a vendor receives and accepts in good faith from a purchaser a resale or other exemption certificate . . . *authorized by the appropriate state*." (emphasis added)). Essentially, the argument is that because no MTC should have been issued for Southwest Mobile's services, Southwest Mobile's acceptance of the MTC does not fall within Article V, Section 2 at all. This interpretation would gut the good faith exception altogether. As a hearing officer in an earlier similar case wrote,

> [I]f the good faith safe harbor only applied to instances where the buyer timely executed a proper type of NTTC to a seller-taxpayer for a legitimately [deductible] transaction, a seller-taxpayer would have already qualified for the deduction . . . without ever having to consider that statute's safe harbor provision. In other words, there would be no purpose in creating a good faith, safe harbor exception . . . if the only way a taxpayer could ever qualify for the exception is by otherwise satisfying the statute's primary NTTC requirements.

*In re Protest of Case Manager to Assessment Issued Under Letter ID No. L0767748416*, Dec. No. 13-12, 15 (May 15, 2013), *available at* http://www.tax.newmexico.gov/tax-decisions-orders.aspx. In *Leaco*, the good faith provision applied to permit a deduction even when the underlying transaction was in fact taxable. 1974-NMCA-076, ¶ 22. The responsibility for submitting the wrong form was placed on the buyer, not on the seller. *See id.* ¶ 20 ("Whether the NTTC has been properly issued is a matter between the [Department] and the one who issues the NTTC."). The situation here is more mundane than in *Leaco*, because the parties agree that the transactions would have been deductible if only the correct form had been

used. If the good faith provision applied to the facts in *Leaco*, we see no reason why it would not apply here.

{16} Next, seeming to acknowledge that if Southwest Mobile had received an NTTC that was improper in some way the good faith provision would apply, the Department seems to argue that there should not be a good faith exception for acceptance of MTCs because the Department does not have "authority" over a buyer under the MTC, and, consequently, "[i]t cannot require the buyer to provide information or examine its tax records" and may address non-compliant buyers only by reporting them to the Multistate Tax Commission. The Department does not provide citations to support these contentions. Even if the Department's authority over buyers issuing MTCs is limited under the Compact, any such limitation does not alter the applicability of the good faith provision. The Department's argument is essentially a policy position. But the Legislature indicated a contrary policy when it adopted the good faith provision along with all the other terms of the Compact. "It is . . . a cardinal rule of construction that, where possible, effect must be given to every part of a statute." *State ex rel. Clinton Realty Co. v. Scarborough*, 1967-NMSC-152, ¶ 9, 78 N.M. 132, 429 P.2d 330; *see Baker v. Hedstrom*, 2013-NMSC-043, ¶ 24, 309 P.3d 1047 ("[Appellate courts] must interpret a statute so as to avoid rendering the Legislature's language superfluous."). We therefore assume that the Legislature intended the good faith provision to apply to out-of-state buyers. Any quarrel the Department has with the

extent of its ability to monitor buyers issuing MTCs under the Compact is best addressed with that body.

{17} Moreover, the Department's argument does not apply to the facts here. The parties agree that Oasis was required to and in fact did register with the Department. Indeed, Oasis prepared a proper NTTC, issued by the Department, on request by Southwest Mobile. Oasis did not dispute that it owed taxes and the hearing officer found that Oasis had "paid the New Mexico gross receipts tax on its resales of [Southwest Mobile's] services." These facts establish that Oasis was subject to the Department's authority in all ways material to the transactions at issue. The fact that Oasis prepared the wrong form for Southwest Mobile does not outweigh these other facts. *See N.M. Taxation & Revenue Dep't v. Maestas*, No. 32,940, mem op. ¶ 8 (N.M. Ct. App. Apr. 29, 2015), *cert. denied* 2015-NMCERT-006, 367 P.3d 850 ("[T]he Department appears to be arguing that [the t]axpayer's deduction that is otherwise allowable, should be disallowed here because [the t]axpayer had the wrong form at the right time and the right form at the wrong time. This argument exalts form over substance.")

{18} Finally, the Department briefly argues that Southwest Mobile did not act in good faith because it "could have been determined [that the MTC was not the proper form] by simply reading the MTC form which sets out in plain language the limitations of the MTC." We defer to the hearing officer's finding of fact on this issue

13

because it is supported by the evidence. *See Trujillo*, 1993-NMCA-114, ¶ 13 ("Under [the whole record review] standard, we view the evidence presented at trial in the light most favorable to the . . . findings entered below[.]"). The hearing officer found that "[Southwest Mobile] believed that its sales in New Mexico were not subject to the gross receipts tax based on the MTCs provided, the representations made by Oasis, and the advice of its accountant, who was a CPA." She also found that Southwest Mobile "accepted the MTCs in good faith." In spite of the language on the MTCs, these findings are supported by Cameron's testimony at the hearing.

**CONCLUSION**

{19}    We conclude that the hearing officer's decision that the Compact's good faith provision did not apply here was a misapplication of law. Southwest Mobile timely accepted the MTC in good faith consistent with Article V, Section 2 of the Compact. Consequently, we reverse the hearing officer's decision.

{20}    **IT IS SO ORDERED.**


_____
                    **MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Judge**

14

_____

**STEPHEN G. FRENCH, Judge**